[Sac. No. 480. In Bank.—March 24, 1898.]

CHARLES A. SPIER, Appellant, v. ROBERT BAKER et al., as Board of Supervisors of Tulare County, Respondents.

PRIMARY ELECTIONS—CONSTITUTIONAL LAW—TITLE OF ACT.—Under section 24 of article IV of the constitution, requiring every act of the legislature to embrace but one subject, which shall be expressed in its title, the insertion in the title of the act of the words, "for other purposes," does not have the effect to validate provisions of the act which are not germane to the particular subject expressed in the title.

ID.—SUBJECT-MATTER OF ACT.—Certain provisions of the Act of March 13, 1897, entitled, "An act providing for general primary elections within the state of California, and to promote the purity thereof by regulating the conduct thereof, and to support the privileges of free suffrage thereat, by prohibiting certain acts and practices in relation thereto, and providing for the punishment thereof,. and for other purposes," which are recited in the opinion, held within the prohibition of section 24 of article IV of the constitution, and therefore void, because totally foreign to any question relating to primary elections.

ID.—QUALIFICATIONS OF ELECTORS—REGULATION OF ELECTIONS.—The primary election provided for by the act of March 13, 1897, is an election "authorized by law," within the meaning of section 1 of article II of the constitution, and the provisions of that section defining the qualifications of electors at all elections authorized by law, are controlling in determining the right to vote at such primary elections. Such right can neither be enlarged nor curtailed by the legislature. Section 11 of article XX of the constitution only authorizes the passage of laws looking to the proper and reasonable regulation of the exercise of the right of free suffrage.

ID.—ENLARGEMENT OF RIGHT OF SUFFRAGE.—Section 23 of the primary election law, providing that all native born citizens who since the last general election have become of legal age, and who have been legal residents of the county for thirty days prior to the election, shall be entitled to vote, as well as all citizens who have become so by naturalization since the last general election, and who have been legal residents as aforesaid, is an enlargement of the constitutional right of suffrage, which requires a legal residence in the state for one year, in the county for ninety days, and in the precinct for thirty days, and in the case of a naturalized citizen, requires his naturalization to have occurred at least ninety days prior to the day of election. Such section is unconstitutional and void.

ID.—CURTAILMENT OF RIGHT OF SUFFRAGE.—Section 22 of the act, providing that no person shall be allowed to vote at such primary elections whose name does not appear upon the great or precinct register of the county, or the city and county, used at the last general election, or upon the supplements to such great or precinct reg-

isters, is unconstitutional and void, because debarring from participating in elections held under the act the following classes of electors, who have the constitutional right to vote, viz: 1. All native born citizens who have arrived at age since the last general election; 2. All foreign born citizens naturalized since the last general election and ninety days prior to the primary election; 3. All electors who have changed their residence from one county to another since the last general election; 4. All electors who have secured a residence in the state since the last general election; 5. All electors of the state at the last general election who failed to have their names placed upon the great or precinct registers or supplements thereto prior to that election; 6. All foreign born citizens who were naturalized within ninety days next preceding the last general election.

ID.—SPECIAL LEGISLATION.—If it be conceded that the test provided for by section 17 of the act is a valid exercise of legislative power, and that the primary elections provided for by the act are not elections authorized by law within the meaning of the constitution, the act is nevertheless unconstitutional and void for being special legislation, in that it discriminates in favor of and against certain classes and individuals, who under the constitution are entitled to vote at elections.

ID.—TEST FOR VOTERS.—Whether the legislature has power to establish a test for voters at any election, considered but not determined.

APPEAL from a judgment of the Superior Court of Tulare County.   Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

Thomas V. Cator, and T. Carl Spelling, and Frank J. Sullivan, *amici curiae*, for Appellant.

F. B. Howard, and F. S. Stratton, *amicus curiae*, for Respondents.

GAROUTTE, J.—This is an action to determine the constitutionality of a primary election law, passed at the last session of the legislature, and approved March 13, 1897.   It is contended upon the part of the various counsel assailing this law that its enforcement will be an expensive burden upon the people; that, under the guise of a great reform, a system of elections has been devised which, by its expensive and complicated procedure, greatly increases the tendency to place the political life of the state in the hands of those who make politics a profession; that the whole theory of the law is wrong in regulating the political action of parties, associations, and individuals, and thereby destroying that freedom of political association which has hereto-

fore always existed in this country, and under which it has be-
come so great; that the act as a whole is incapable of practical
operation by reason of complicated matters of detail, its incon-
sistencies and contradictory provisions; that it has no applica-
bility to small counties and sparsely settled districts, and that no
demand for such a law is found, aside from a few of the larger
cities of the state. It is shown by the brief of Mr. F. J. Sulli-
van, representing the Nonpartisan Party, that the inevitable
tendency of the operation of the act will be to overwhelm and
destroy all small political parties, and prevent the organization
of new parties; that, inasmuch as no party may be organized
after a convention, and secure representation upon the official
ballot, it follows that if this law had been in force at the last
presidential election there could have been neither a Gold Dem-
ocratic Party nor a Silver Republican Party in this state; that
it has the greatest tendency to discourage independent parties
and independent voting, and thereby nullifies some of the vital
and most meritorious provisions of the Australian ballot law.
All the claims advanced by counsel in these regards as to the
objectionable character of the law may be true. We are satis-
fied that many of them are true. But this court has no power
to correct the evils in this law. It is not our province to approve
good legislation and condemn bad legislation. The act stands
upon the statute book as the lawful expression of the will of the
people of the state, and with the good or bad policy exercised in
enacting it we cannot deal. By its passage the legislature has
attempted to meet existing political conditions, and remedy great
evils found therein. It is not for the court to say whether fail-
ure or success will follow as a result of its practical operation.
Within its domain the legislative power is absolute, and the rem-
edy for unwise legislation is not with the courts, but with the
people. In the present proceeding, it is our duty alone to pass
upon the validity of this act, tested by the various provisions of
the constitution of the state.

The act is entitled: "An act providing for general primary
elections within the state of California, and to promote the pur-
ity thereof by regulating the conduct thereof, and to support the
privileges of free suffrage thereat, by prohibiting certain acts and
practices in relation thereto, and providing for the punishment

.thereof, and for other purposes." A provision of the state constitution provides: "Every act shall embrace but one subject, which shall be expressed in its title; but, if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title." (Const., art. IV, sec. 24.)

Let us test the title of this act in the crucible furnished by the foregoing provision of the constitution. The legislature, in framing this title, was above all things candid. Upon its very face the law-making power challenged the sound policy of this provision of the constitution, and, avowedly disregarding it, declared that the purpose of the act was the creation of a primary election law and "other purposes." Under the cloak of "other purposes," all and every conceivable kind of legislation could hide and thrive in the body of the act, and thus the constitutional provision be set at naught. In this state, when these words "for other purposes" are found in the title of an act of the state legislature they accomplish nothing, and in reading the title our eyes are closed to them. We then have before us, .tested by its title, an act dealing solely with general primary elections, and providing penalties for violating the law relating thereto. Any matters of legislation contained in the body of the act not bearing upon primary elections must go out; the constitutional provision quoted so declares. Weighing and measuring the legislation found in the act by this test, very many provisions have no place there. It would seem that the legislature, in using the words "for other purposes" in the title, used those words advisedly, and in good faith lived up to them fully. .For the legislation found in section after section of the act can .find no justification in its title, save under those words of boundless meaning, "for other purposes."

Section 1 defines what are state, district, and local conventions of political parties. Section 2 declares that state conventions shall have power at their option to divide themselves into district conventions to nominate candidates for Congress, or other district nominees. Section 10 declares that, after a call for a primary election has been issued by the election commissioners, the governing body of any political party or organization desiring to secure a place upon the official ballot for its nom-

· inees at the succeeding election must publish a call for a convention, and provides in detail for the time when the convention may be called, and requires notice to be given in certain papers thereof. Section 12 declares that no person shall be allowed to hold more than one proxy at any convention. Section 13 provides that no nomination by any political convention (with certain exceptions) shall be put upon any official ballot, unless such .convention is constituted in accordance with this act. Section 17 declares who may sign a petition authorizing the placing of names of candidates upon the official ballot without the aid of conventions. Section 24 declares certain powers of state conventions. Section 33 provides that no candidate nominated by a convention shall be placed upon the official ballot unless he files an affidavit setting forth certain facts as to the expenditure of moneys in securing his nomination. Section 34 provides that candidates shall make an itemized statement of all moneys expended in securing nominations. Section 35 provides for penalties against candidates in refusing or neglecting to file the above-mentioned statement. Section 36 declares who shall be entitled to have their names placed upon the official ballot. The foregoing matters, taken from the body of the act, are fairly illustrative as comprising legislation not justified by its title. Many of these things are totally foreign to any question relating to primary elections, and others are so remotely connected with that subject as to clearly come within the prohibition of the con-·stitutional provision. These matters of legislation, not being embraced within the purview of the title, are void and fall to the ground. Yet, while the elimination of them from the act to some extent may leave it weak and enfeebled, it still has sufficient vitality to stand alone, and we pass to a further examination of its condition viewed from other angles, and tested by the aid of other crucibles furnished by the constitution.

Section 1, article II, of the constitution provides: "Every native male citizen of the United States, every male citizen who shall have acquired the rights of citizenship under or by virtue of the treaty of Queretaro, and every male naturalized citizen thereof, who shall have become such ninety days prior to any election, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of

the county in which he claims his vote ninety days, and in the election precinct thirty days, shall be entitled to vote at all elections which are now or may hereafter *be authorized by law.*" And in furtherance of this constitutional declaration section 11, article XX, of the constitution provides: "The privilege of free suffrage shall be supported by laws regulating elections, and prohibiting under adequate penalties all undue influence thereon from power, bribery, tumult, or other improper practices." When tested in the crucible furnished by these provisions of the organic law, the whole act must give way as failing to meet the requirements there laid down. The primary election provided for in the present act is an election "authorized by law" under the foregoing provision of the constitution. This must be so, for the law is a mandatory law. It has been directly decided to be an election referred to in the constitution. (*Marsh v. Supervisors,* 111 Cal. 368.) It must be an election under this provision of the constitution, or the legislature would have no power to provide that money should be taken from the state and county treasuries to pay the expenses of conducting it. The validity of any taxation, looking toward the raising of money for such purposes, would be absolutely void if the elections provided for by the act are not elections recognized by and referred to in this constitutional provision. These things being true, the legislature has no power to deprive any citizen of the state who fills all the requirements demanded by the section of the constitution quoted, from voting at an election provided for by this act. In this country, the right to vote is recognized as one of the highest privileges of the citizen. It is so recognized not only by the citizen, but by the law; and any attempted infringement by legislative power upon that right as granted by the constitution is idle legislation. If the legislature by this act has deprived citizens of the right to participate in the elections therein provided, who are qualified to participate under the constitution—aye, even if the legislature has deprived one citizen so qualified of such right—the act is void as an attempted exercise of power it does not possess. As we have seen, section 11, article XX, of the constitution authorizes the legislature to pass laws in support of the privilege of free suffrage. This does not mean the authorization of laws looking toward the curtail-

ment and deprivation of free suffrage. The legislature has the power to pass laws looking to the proper and reasonable regulation of the exercise of the right of free suffrage, and when that has been done its power has been exhausted.

Before passing to an examination of the act itself for the purpose of ascertaining who are entitled to participate in the elections held thereunder, we will consider another matter closely allied to the question now under consideration. Among other things found in section 23 of the act, it is provided: "Any native born citizen who since the last general election has become of legal age, or any person who has become naturalized since the last general election, shall be entitled to vote at any primary election; providing, he has made application to have his name placed upon the precinct register of the county in which he resides, and of which he has been a legal resident for thirty days prior to any primary election." It will be seen by this provision that all native born citizens who since the last general election have become of legal age, and who have been legal residents of the county for thirty days prior to the election, are entitled to vote. It will also be observed that all citizens who have become so by reason of naturalization since the last general election, and are legal residents as aforesaid, are likewise entitled to vote. Under this provision citizens made so by naturalization upon the day next preceding the election would be entitled to vote. Such legislation is not a curtailment of the constitutional right of suffrage, but an enlargement of that right. That is, the legislature has attempted to extend the right of suffrage to certain classes of citizens outside of those classes mentioned in the constitution. If the legislature has such power, it could extend the right to aliens, to minors, to women. It has no such power. The legislature can no more extend the right of suffrage to persons not included in the constitutional provision than it can deprive persons there included of the right. The application of the maxim, "*Expressio unius est exclusio alterius*," bears with full force upon this provision of the constitution declaring who are competent to vote at elections authorized by the laws of this state. The legislation just quoted from the act bearing upon native born citizens arriving at the age of twenty-one years after the last general election, and citizens naturalized since the last general

election, is void, as being in direct contravention of the constitution of the state. This contravention of the constitution consists in this, that a legal residence in the county alone for thirty days prior to the election is the only condition required by the act, whereas the constitution requires a legal residence in the state for one year, and in the county ninety days, and in the precinct thirty days. This legislation is also in contravention of the constitution in this, that the naturalized citizen under the constitution is not entitled to vote unless his naturalization occurred at least ninety days prior to the day of election.

Section 22 of the act provides: "No person shall be allowed to vote whose name does not appear upon the great or precinct register of the county, or the city and county, used at the last general election held before such primary election, in the precinct in which he desires to vote as a person entitled to vote in such precinct, or unless his name appears upon the supplements to such great or precinct registers." Here is a direct, bald declaration that only those electors whose names appear upon the great or precinct registers, or the supplements thereto, used at the last general election, are entitled to vote. In section 23 we find that portion of the statute giving to certain naturalized citizens and native born citizens who have arrived at years of majority since the last general election the right to vote at the primary election, and providing the means by which they may have their names placed upon the register; but this provision of the law we have already held void as violative of the constitutional provision bearing upon the qualification of voters. The same section also provides that an elector moving from one county to another since the last general election may secure a transfer of his registration; but there are no means provided by which he may have his name placed upon the register used at the primary election. Hence his transfer of registration avails him nothing. For no man may vote unless his name appears upon the register or supplement thereto.

Keeping in view the law's demand that no person shall be allowed to vote whose name does not appear upon the register or supplement mentioned, we will enumerate the various classes of electors, qualified under the constitution to participate in elections, that are debarred from participating in elections held un-

der this act: 1. All native born citizens who have arrived at age since the last general election; 2. All foreign born citizens naturalized since the last general election and ninety days prior to the primary election; 3. All electors who have changed their residence from one county to another since the last general election; 4. All electors who have secured a residence in the state since the last general election; 5. All electors of the state at the last general election who failed to have their names placed upon the great or precinct registers or supplements thereto prior to that election; 6. All foreign born citizens who were naturalized within ninety days next preceding the last general election.

It will thus appear that the legislature has declared only those electors whose names appeared upon the great or precinct register of the county, or the supplement thereto, at the last general election, entitled to vote. If the legislature had enacted similar legislation as to a state or national election, it would have been so palpably void as to fall at the mere suggestion of its appearance before a judicial tribunal. Yet it would be a judicial absurdity to say that citizens of a state having the right under the constitution to participate in state and national elections may be deprived by the legislature of the right to participate in the elections authorized and fostered under this act. As before suggested, these elections are made mandatory by the law. Revenue is raised by the ordinary means of taxation upon all the property of the state to pay the expense of conducting them. Their exclusive conduct and management is taken from political parties, associations, and individuals, and placed in the hands of the state. Their validity can only be upheld upon the theory that they are matters of vital import to the general welfare of the state, and therefore matters in which every citizen and every taxpayer is beneficially interested. In other words, the legislature, believing a sound public policy demanded such a course, has made these elections a state institution. By the whole tenor of the act they are placed upon the plane of state elections, and in the consideration of the law bearing upon them must be so recognized. If the legislature has the power to deprive one class of constitutional electors of the right to participate therein, it has the power to deprive six classes; and, if it be conceded that it has the power to so legislate, of necessity an election thus held would be a stranger

to the constitution, and a pure creature of the statute. Such conditions cannot exist, for the constitution declares that the men here debarred from voting shall be entitled to vote at all elections which may hereafter "be authorized by law." The word "elections," as here used, refers to elections affecting the political life of the state. This is such an election. It is essentially a political election "authorized by law," and therefore an election within this provision of the constitution.

Section 17 provides that by the act of voting the voter declares as a test of his right to so vote a *bona fide*, present intention of supporting the nominees selected by the delegates there elected, and before voting an oath to that effect may be required. The power of the legislature to affix such a test to the right to vote will be alluded to hereafter; but, conceding the existence of the power, then all electors entitled to vote under the constitution, who are ready and willing to comply with this requirement of the law, have a common right to participate in such election, and any discrimination in favor of or against any class or individual is special legislation and prohibited by the constitution. For this reason, even if it be assumed that the elections provided for by the act are not elections recognized by the constitutional provisions which we have had under consideration, still the act must fall by reason of the special legislation to which we have here drawn attention.

The power of the legislature to establish a test for voters at any election presents a matter demanding the most serious consideration. If it were a state or national election, where state officers or presidential electors were chosen, no one would have the temerity to say that a legislative test could be invoked. And the moment you recognize the existence of power in the legislature to create tests in these primary elections, you recognize the right of the legislature to create any test which to that body may seem proper. While the test prescribed in this act may be said to be a most reasonable one, yet the right to make it carries with it the right to make tests most unreasonable. If the power rests in the legislature to create a test, then the power is found in a Democratic legislature to make the test at a primary election a belief in the free coinage of silver at the ratio of sixteen to one, and the same power is found in a Republican legis-

lature to make the test a belief in a protective tariff. If such a power may be sustained under the constitution, then the life and death of political parties are held in the hollow·of the hand by a state legislature. These suggestions present matters for grave consideration, even conceding that the elections provided for in the act come without the provision of the constitution bearing upon elections, and that they are, therefore, mere matters of legislation with which the legislature has full and untrammeled power to deal. We understand this law is the first of its kind in the United States. Its mandatory features present one of the greatest and most important innovations upon past legislation in this country bearing upon primary elections. Under the mandates of this act all political parties and associations must come under its wing or be destroyed. They must all bow down before it as the price of their existence. These things are only done by giant strides in state legislation, and the power of the state legislature to thus enact with reference to political parties presents grave and interesting questions. The foregoing suggestions are put forth in order that the state legislature in future when dealing with this question may appreciate the importance of its work when viewed in the light of the constitutional difficulties to be met and overcome. For the reasons previously given, wherein we hold the law invalid, we have refrained from discussing these important matters, but content ourselves with merely suggesting them.

For the foregoing reasons, the judgment is reversed and cause remanded.

· McFarland, J., Henshaw, J., Van Fleet, J., Harrison, J., and Temple, J., concurred.