[L. A. No. 18354. In Bank. July 11, 1942.]

COMMUNIST PARTY OF THE UNITED STATES OF AMERICA et al., Appellants, v. PAUL PEEK, as Secretary of State, etc., et al., Respondents.

Andersen & Resner, George R. Andersen, Herbert Resner and Leo Gallagher for Appellants.

George Olshausen, Harold M. Sawyer, Bertram Edises, · Clore Warne, A. L. Wirin, Charles J. Katz, Laurence M. Weinberg, Robert Morris, Jr., and Loren Miller, as Amici Curiae, on behalf of Appellants.

Earl Warren, Attorney General, Eugene M. Elson and Lewis Drucker, Deputies Attorney General, J. H. O'Connor, County Counsel, and W. M. McKesson and George W. Wakefield, Deputy County Counsel, for Respondents.

GIBSON, C. J.—In this action plaintiffs challenge the validity of Stats. Fourth Extra Session 1940, page 362, and Stats. 1941, page 3036, which added sections 2540.3, 2540.4, 2540.5 and 2540.9 to the Elections Code. Plaintiffs are the Communist Party of the United States and three individual members thereof. ▮ The right of a political party to maintain an action in this state in its own name is no longer open to question. (*Independence League* v. *Taylor*, 154 Cal. 179 [97 Pac. 303] ; see, also, *Socialist Party* v. *Uhl*, 155 Cal. 776 [103 Pac. 181].) Plaintiffs' amended complaint sets forth three causes of action: the first, an action for declaratory relief seeking to have it adjudged that these statutes are unconstitutional; the second, a petition for a writ of mandate to compel the named defendants to perform the statutory duties necessary to qualify the plaintiff Communist Party to participate in the primary election of August, 1942; and the third, an action under Elections Code, section 2900, alleging that an error or omission is about to occur in the conduct of a primary election and seeking an order directing the defendants to correct the error. The Superior Court of Los Angeles County sustained without leave to amend general demurrers which were interposed to each of the causes of action by the defendant Paul Peek, as secretary of state, the defendant Earl Warren, as attorney general, and the defendant William M. Kerr, as registrar of voters of the county of Los Angeles. Plaintiffs bring this appeal from a judgment thereafter entered for defendants. The defendant William M. Kerr has

since died and his successor, Michael J. Donoghue, has been substituted as registrar of voters of Los Angeles County.

We find no error in the trial court's ruling as to the first two causes of action. Under Code of Civil Procedure, section 1061, the court may refuse in its discretion to grant the relief sought in an action for a declaratory judgment. It appears from the face of the pleading that a speedy and adequate remedy for this purpose is provided by Elections Code, section 2900. Under such circumstances it cannot be said that the trial court abused its discretion in refusing to grant declaratory relief. (See Borchard, Declaratory Judgments (1941), p. 357, et seq.) Neither can the court's order sustaining general demurrers to the petition for a writ of mandate be challenged successfully. Plaintiffs sought in their petition to compel the performance of future acts which, it was alleged, the defendants would refuse to perform when performance became due. Mandamus will not lie to compel the performance of future acts, and for that reason the general demurrers to the petition for the writ were properly sustained. (*McGinnis* v. *City of San Jose,* 153 Cal. 711 [96 Pac. 367]; *McMullen* v. *Glenn-Colusa Irr. District,* 17 Cal. App. (2d) 696 [62 P. (2d) 1083].)

In their third cause of action, however, plaintiffs sought to set forth facts entitling them to relief under Elections Code, section 2900. That section provides: "Whenever it is made to appear by affidavit to the Supreme Court, District Courts of Appeal, or superior court of the proper county that an error or omission has occurred or is about to occur in the placing of any name on, or in the printing of, an official primary election ballot, or that any wrongful act has been or is about to be done by any person charged with any duty concerning the primary election, or that any neglect of duty has occurred or is about to occur, such court shall order the officer or person charged with such error, wrong or neglect forthwith to correct the error, desist from the wrongful act or perform the duty, or show cause why he should not do so. Any person who fails to obey the order of such court shall be cited to show cause why he is not in contempt of court." By affidavits of the individual plaintiffs Whitney, Yates and Perry it is alleged that an error or omission is about to occur in the placing of a name on an official primary ballot and that a wrongful act and neglect of duty is about to occur on the part of persons charged with a duty concern-

ing a primary election. Defendants interposed general demurrers to this cause of action which were sustained by the trial court. Plaintiffs allege that the Communist Party and the individual plaintiffs will be denied the right to participate in the primary election of August, 1942, and that defendants have declared their intention to refuse to take any steps to qualify the Communist Party and its nominees for a place on the ballot at the primary election. This refusal, it is said, is made in reliance upon the provisions of Elections Code, sections 2540.3, 2540.4, 2540.5 and 2540.9. On appeal plaintiffs argue that these sections of the Elections Code are unconstitutional, and for that reason urge that the conduct of defendants will result in an error, omission or neglect of duty in connection with the primary election under the statutory provisions which are controlling. The question of the constitutionality of the challenged sections of the Elections Code is thus directly presented for consideration by this court.

The statutory provisions which are involved upon this appeal read as follows:

Elections Code, section 2540.3 (added by Stats. Fourth Ex. Sess. 1940, p. 362, §1). "Notwithstanding any other provisions of this code, no party shall be recognized or qualified to participate in any primary election which uses or adopts as any part of its party designation the word 'communist' or any derivative of the word 'communist.'"

Elections Code, section 2540.4 (added by Stats. Fourth Ex. Sess. 1940, p. 362, § 2). "Notwithstanding any other provisions of this code, no party shall be recognized or qualified to participate in any primary election which is directly or indirectly affiliated, by any means whatsoever, with the Communist Party of the United States, the Third Communist International, or any other foreign agency, political party, organization or government or which either directly or indirectly carries on, advocates, teaches, justifies, aids, or abets the overthrow by any unlawful means of, or which directly or indirectly carries on, advocates, teaches, justifies, aids or abets a program of sabotage, force and violence, sedition or treason against, the Government of the United States or of this State."

Elections Code, section 2540.5 (added by Stats. 1941, p. 3036). "Notwithstanding the provisions of section 2540, no party shall be qualified to participate in any primary election unless it appears to the Secretary of State, as a result of

examining and totaling the statements of registration of voters and their political affiliations transmitted to him by the county clerks 25 days prior to the last preceding primary election, that not less than 2,500 voters declared their intention of affiliating with that party.''

Elections Code, section 2540.9 (added by Stats. Fourth Ex. Sess. 1940, p. 362, § 3). ''The Secretary of State shall, with the advice and consent of the Attorney General, determine which parties are qualified to participate in any primary election. Such determination shall be subject to review by the courts in accordance with law.''

The statutes challenged in this action constitute an attempted sweeping legislative revision of the provisions which for many years have governed the right of a political party to participate in primary elections in this state. (*Cf.* Elections Code (1939), § 2540; Deering's Gen. Laws 1937, Act 2256, § 1, subd. 9; Stats. 1913, p. 1379, § 1, subd. 9.) Before entering upon the task of examining the constitutionality of this legislation, it would be well to set forth briefly certain of the fundamental principles which must guide our deliberations.

*First*, the right of suffrage, everywhere recognized as one of the fundamental attributes of our form of government, is guaranteed and secured by the Constitution of this state to all citizens who are within the requirements therein provided. (Const. of Cal., art. II, § 1; *Spier* v. *Baker*, 120 Cal. 370, 374 [52 Pac. 659, 41 L. R. A. 196] ; *Britton* v. *Board of Election Commrs.*, 129 Cal. 337, 340 [61 Pac. 1115, 51 L. R. A. 115] ; *People* v. *Elkus*, 59 Cal. App. 396, 398 [211 Pac. 34] ; *Cohn* v. *Isensee*, 45 Cal. App. 531, 538-539 [188 Pac. 279].) This constitutional right of the individual citizen includes the right to vote ''at all elections which are now or may hereafter be authorized by law,'' (Const. of Cal., art. II, § 1), including the right to vote at primary elections. (*Spier* v. *Baker, supra*, p. 375; *Britton* v. *Board of Commrs., supra*, p. 341.)

*Second*, although the Legislature's power to pass laws regulating the conduct of elections was conceded under Constitution, article XX, section 11 (*cf. Bergevin* v. *Curtz*, 127 Cal. 86, 88 [59 Pac. 312]), the Legislature was wholly without power, prior to the adoption of article II, section 2½, in 1900, to exclude any citizen from participation in a primary election who was within the terms of the constitu-

tional provision. (*Spier* v. *Baker, supra,* p. 375.) As the court said in the Spier case (p. 375), ". . . the Legislature has no power to deprive any citizen of the state who fills all the requirements demanded by the section of the Constitution quoted, from voting at an election provided for by this act [a primary election law]. In this country, the right to vote is recognized as one of the highest privileges of the citizen. It is so recognized not only by the citizen, but by the law; and any attempted infringement by legislative power upon that right as granted by the Constitution is idle legislation. If the Legislature by this act has deprived citizens of the right to participate in the elections therein provided, who are qualified to participate under the Constitution—aye, even if the Legislature has deprived one citizen so qualified of such right—the act is void as an attempted exercise of power it does not possess. As we have seen, section 11, article XX, of the Constitution authorizes the Legislature to pass laws in support of the privilege of free suffrage. This does not mean the authorization of laws looking toward the curtailment and deprivation of free suffrage." In that case the court invalidated a legislative attempt to restrict the right to vote in a primary election to those voters registered at the prior general election, and held that the Legislature was without power to establish tests governing a citizen's right to vote in a primary election.

*Third,* the inability of the Legislature to infringe the citizen's constitutional right of suffrage prior to 1900 meant that, in any situation where the party system was an integral part of the elective machinery, the Legislature could not deny to a particular political party the right to participate in a given decision. (*Britton* v. *Board of Commrs., supra; Eaton* v. *Brown,* 96 Cal. 371, 373 [31 Pac. 250, 31 Am. St. Rep. 225, 17 L. R. A. 697].) In any election where the party system furnishes the means by which the citizen's right of suffrage is made effective, denial of his party's right to participate in the election accomplishes, in the words of the court in the Britton case, "the disfranchisement of voters, or . . . [compels] . . . them, if they vote at all, to vote for representatives of political parties other than that to which they belong. The deprivation of the right of selection is a deprivation of the right of franchise." (*Britton* v. *Board of Commrs., supra,* p. 344; *cf. People* v. *Election Commrs.,* 221 Ill. 9, 18 [77 N. E. 321, 5 Am. Cas. 562]; *State* v. *Phelps,*

144 Wis. 1, 5, 33 [128 N. W. 1041, 35 L. R. A. (NS) 353];
see Starr, *Legal Status of American Political Parties,*
(940) 34 Am. Pol. Science Rev. 439, 444.) In some jurisdic-
tions the basis for the citizen's right to exercise his franchise
through political parties is also founded upon such funda-
mental doctrines as the constitutional right of assembly and
the right of petition. (See, Starr, *op. cit. supra,* p. 444.) De-
fendants argue that the fact that certain offices may be made
non-partisan (Const. of Cal., art. II, § 2¾) indicates that
the party system cannot be said to be a part of the citizen's
constitutional right of suffrage. The obvious answer to this
contention is that in a non-partisan election the party system
is not an integral part of the elective machinery and the indi-
vidual's right of suffrage is in no way impaired by the fact
that he cannot exercise his right through a party organiza-
tion.

■ *Fourth,* since the adoption of article II, section 2½ of
the Constitution of California in 1900, the Legislature has had
power to exclude both individual citizens and political parties
from participation in primary elections upon certain condi-
tions. That section of the Constitution provides: "The legis-
lature shall have the power to enact laws . . . providing for
the direct nomination of candidates for public office . . . at
elections to be known and designated as primary elections;
*also to determine the tests and conditions upon which elec-
tors, political parties, or organizations of electors may partici-
pate in any such primary election. . . .*" (Italics added.) The
purpose of this constitutional amendment was to give the
Legislature a free hand in dealing with the evils which had
formerly been prevalent in primary elections, even to the
extent of excluding parties and individuals from participa-
tion therein. (*Schostag* v. *Cator,* 151 Cal. 600, 605 [91 Pac.
502]; *Heney* v. *Jordan,* 179 Cal. 24, 27 [175 Pac. 402].) The
power thus conferred upon the Legislature, however, to re-
strict the constitutional right of suffrage has not been con-
strued to be unlimited in scope. In discussing this power the
court said in *Socialist Party* v. *Uhl,* 155 Cal. 776 [103 Pac.
181], at page 792, "The power is vested in the legislature
under section 2½ of article II, to determine the tests and con-
ditions upon which participation in a primary election may
be had either by electors as voters thereat or by electors as
candidates thereunder. The right is thus conferred to pre-
scribe any reasonable test and it is the duty of the legislature
to prescribe one . . . The obvious purpose of a primary law is

to preserve the integrity of parties. The necessity for maintaining the integrity of such parties is recognized in the constitutional provision with reference to primary elections . . . it is the duty of the legislature when legislating upon the subject of primaries to so legislate as to maintain the integrity of parties, and the integrity of any political party. . . .'' Throughout the court's opinion in the Uhl case it is emphasized that the power of the Legislature to restrict the right of suffrage is limited to prescribing tests and conditions for participation in primary elections which are reasonable and not arbitrary. (See *Socialist Party* v. *Uhl, supra,* pp. 785-787, 789-790, 792-794.) In *Schostag* v. *Cator,* 151 Cal. 600 [91 Pac. 502], in which it was pointed out that the purpose of the constitutional amendment was to give the Legislature practically a free hand in dealing with primary elections, the court nevertheless emphasized that its power in restricting the right of suffrage was limited to setting up reasonable tests and conditions. (See *Schostag* v. *Cator, supra,* pp. 603-604; *Katz* v. *Fitzgerald,* 152 Cal. 433, 435-436 [93 Pac. 112]; *Heney* v. *Jordan,* 179 Cal. 24, 28 [175 Pac. 402].) It follows, therefore, that the legislation challenged in this action is valid as a restriction upon the fundamental right of suffrage only if it comes within the limited power conferred upon the Legislature by California Constitution, article II, section 2½, to prescribe reasonable tests and conditions for participation by parties and individuals in primary elections.

 1. *Act prohibiting use of word "communist."* (Elections Code, § 2540.3.)

In this section (Stats. Fourth Ex. Sess. 1940, p. 362, § 1) the Legislature provided that no party should be qualified to participate in any primary election ''which uses or adopts as any part of its party designation the word 'communist' or any derivative of the word 'communist.' '' In considering the validity of this legislation the court may not interfere ''if there is any theory upon which the provision might reasonably have been concluded by the legislature to be essential.'' (*Heney* v. *Jordan, supra,* p. 27.) We can, however, find no reasonable ground upon which such a restriction of the constitutional right of suffrage can be justified. For the first time, in enacting conditions for participation in primary elections, the Legislature has departed from the tests of numerical strength and party registration which hitherto have been adopted as reasonable measures for improving the operation

546

of the primary election as an instrument for expressing the desires of the individual voters. If we assume that the Legislature has power under the Constitution to deprive voters of their right of suffrage because of their political beliefs and assume, as argued by defendants, that the present statute proscribing any party designated by the word "communist" was designed to eliminate from the primary election those parties which advocate subversive doctrines, we cannot find that this statute has any reasonable relation to that purpose. The name adopted by a political party is frequently without any value in ascertaining the political beliefs of its adherents, and if the beliefs were pernicious, they would remain so despite a change in the name of the party. Reference to our own political history is sufficient to illustrate the utter impossibility of placing reliance upon the name currently used by a political party in so vital a matter as depriving it of a place on the primary ballot. Assuming for the moment, therefore, that the Legislature has power to deny the use of the primary election machinery to particular groups of dangerous citizens, it does not follow that it may do so by a statute which merely operates to deny to such groups the use of a particular name. Such legislation is particularly unfortunate when made the basis for restricting so fundamental a right as that of free suffrage. The statute has no reasonable relation to the goal at which the Legislature presumedly aimed, and it must be held invalid as unreasonable.

It is suggested that the Legislature might properly forbid the use of a particular name by political parties if some evil or unlawful connotation applies to that name. In apparent recognition of this theory defendants urge that this court can take judicial notice of the fact that the Communist Party advocates the overthrow of the government by force and violence. ■ The doctrine of judicial notice was adopted as a judicial short-cut to avoid necessity for the formal introduction of evidence in certain cases where there is no real need for such evidence. Before a court will take judicial notice of any fact, however, that fact must be a matter of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof. (See discussion 10 Cal. Jur. 693.) As was pointed out in *Varcoe* v. *Lee*, 180 Cal. 338, 344 [181 Pac. 223], "if there were any possibility of dispute" the fact cannot be judicially noticed; and again (p. 345): "It is

truly said that the power of judicial notice is as to matters claimed to be matters of general knowledge one to be used with caution. If there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge evidence should be required.''

Tested by these standards, the doctrine has no place in the present case. Not only do plaintiffs vigorously assert that the Communist Party does not advocate force and violence, but the decided cases have definitely demonstrated that the fact here alleged to exist is not the subject of judicial notice. In *State* v. *Reeves*, 5 Wn. (2d) 637 [106 P. (2d) 729, 130 A. L. R. 1465], the attorney general of Washington urged, as do defendants here, that the Communist Party should be kept off the ballot and that the courts could take judicial knowledge of the fact that the party advocated force and violence. The Supreme Court refused to take judicial notice of that fact for the reason that the litigants denied it. Furthermore, it was said, if the court in the election case were to make a judicial finding on the question it would be tantamount to holding all registered communists were guilty of violating the criminal syndicalism act in the absence of evidence on the question. The court pointed out that the cases relied upon by the attorney general in that case (as are most of the cases relied upon by defendants) dealt with the deportation of aliens, and were cases reviewing an administrative record which did not involve judicial notice at all. In *Ex parte Fierstein*, 41 F. (2d) 53, a similar contention was made before the Ninth Circuit Court of Appeals. There the court reversed an order of deportation which had been predicated on proof the alien was a communist. Judge Wilbur, speaking for a unanimous court, held that the court could not take judicial notice of the fact that the Communist Party advocates force and violence, and that the order could not stand in the absence of evidence of that fact. Referring to some of the cases relied upon by defendants in the present case, the court stated (p. 54) : ''While the character of this organization has frequently been considered by the court, and in some very recent cases, *Whitney* v. *California*, 274 U. S. 357 [47 S. Ct. 641, 71 L. Ed. 1095] ; *Antolish* v. *Paul* (C. C. A.), 283 Fed. 957; *Skeffington* v. *Katzeff*, 277 Fed. 129; *Ex parte Jurgans* (D. C.), 17 F. (2d) 507, the decisions in these cases are based upon the evidence adduced before the court with reference to the character of this organi-

zation, and the statements made in the opinions of the court with reference to that organization are based upon the testimony before the court, and in no instance has the court attempted to take judicial notice of the character of this organization.''

None of the cases cited compels a contrary conclusion. Most, if not all, of the federal cases relied upon did not involve the question of judicial notice at all. They were cases involving reviews of determinations by the Department of Labor, which by law is vested with fact-finding power and whose determinations were predicated on evidence. These cases were so distinguished in the Reeves and Fierstein cases, *supra*. In the case of *In re Coon,* 44 Cal. App. (2d) 531 [112 P. (2d) 767], the appellate court did state (p. 543) : ''It is a matter of common knowledge that the Communist Party comes within that category''—that is, within the group that advocates and practices the overthrow of government by subversive activities. The statement was not only dictum, but it had no reference to the doctrine of judicial knowledge which was not involved in the case. The same can be said of *Field* v. *Hall,* 201 Ark. 77 [143 S. W. (2d) 567]. As was pointed out in the Reeves case, *supra,* to hold that this court will take judicial notice of the alleged fact that the Communist Party advocates force and violence, without any evidence of that fact, would not only require judicial notice of a fact which plaintiffs and their counsel vehemently deny, but it would also necessitate a finding that every registered communist is a felon and could be convicted of a violation of our criminal syndicalist law upon mere proof of membership in the Communist Party. That is not the law.

Although not urged in the briefs, it was suggested at oral argument that the prohibition against use of the word ''communist'' may be sustained because the statute can be said to contain an implied finding by the Legislature that the Communist Party advocates the forceful overthrow of the government. It is said that this implied legislative finding, even though on a controversial issue, is binding on the courts. To state the contention is to refute it. Aside from the fact that it is not the function of the Legislature to determine whether a statute declaring a general policy has been violated in a particular case, that being a judicial function, it is clear that a statute which purports to determine that a particular person or group has violated a general law is special in nature, and violates article IV, section 25, subdivision 11, of the Con-

stitution, which provides: ''The Legislature shall not pass local or special laws in any of the following enumerated cases. . . . Eleventh—Providing for conducting elections. . . .''

We have no doubt that it is within the Legislature's power to investigate elections and to determine that the public interest requires that any party advocating the forceful overthrow of government should be denied a place on the ballot. Neither have we any doubt that the finding of the Legislature that the problem requires restrictive legislation is conclusive on the courts. The Legislature, however, is without power to determine that a particular person or group has advocated the doctrine which violates the policy laid down in the statute. If the statute be interpreted to include the implied finding here in question, as contended by defendants, it would mean that the Legislature had determined that a special group had violated the general policy of the statute. Such legislation would clearly be unconstitutional. That this is so, can readily be demonstrated. For example, it is clearly within the power of the Legislature to determine as a fact that, in the public interest, all diseased cattle should be destroyed, but it is not within the legislative power to determine that John Smith's cattle are diseased. So, while it was clearly within the legislative power to determine that, in the public interest, any party advocating the forceful overthrow of the government of the United States should be denied a place on the ballot, it is not within the power of the Legislature to determine that the Communist Party advocates the doctrine in question. It is now too well settled to require extensive discussion that a law is special and unconstitutional if it confers particular privileges or imposes peculiar disabilities in the exercise of a common right upon a single person or group arbitrarily selected. (*City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604] ; *Smith* v. *McDermott*, 93 Cal. 421 [29 Pac. 34] ; *Darcy* v. *City of San Jose*, 104 Cal. 642 [38 Pac. 500].) It follows, that while the Legislature may properly deny a place on the ballot to any party advocating the forceful overthrow of the government, it may not, constitutionally, determine that a specified party advocates the doctrine in question without running afoul of the constitutional provision above quoted.

2. *Act forbidding foreign affiliation or policy of violence.* (Elections Code, § 2540.4.)

In this section of the Elections Code (added by Stats. Fourth Ex. Sess, 1940, p. 362, sec. 2) the Legislature sought

to deny participation in the primary elections to any political party affiliated with the Communist Party, the Third Communist International or any other foreign agency or political party. It also sought to deny participation to any party which advocates the overthrow of the government by unlawful means or carries on a program of sabotage or force and violence. The plaintiff Communist Party alleges that defendants, relying upon this statute, have declared their intention to refuse to take any steps to qualify the Communist Party or its nominees to appear on the primary ballot in August, 1942. While the allegations of the complaint do not indicate that the plaintiff party is subject to disqualification under each of the various clauses of this statute, we deem it necessary, in view of the fact that this cause must be remanded for further action by the trial court, to determine the constitutional issues raised by the statute as a whole for the guidance of the lower court.

Insofar as section 2540.4 prohibits the qualification of any party "which is directly or indirectly affiliated, by any means whatsoever, with the Communist Party of the United States [or with] the Third Communist International," it is subject to the defects already pointed out with reference to section 2540.3. It is special legislation and it attempts to bar political beliefs merely by reference to the particular name borne by groups at present thought to advocate objectionable doctrines. Such legislation has no rational basis. The change of a party name would satisfy the statute without altering the political doctrines at which the Legislature has aimed its restrictions. In this particular, therefore, section 2540.4 must also be held to have no reasonable relation to the purposes which the Legislature had in mind. The test is not a reasonable one and it is outside the power conferred upon the Legislature by article II, section 2½ of the Constitution. It is also invalid because it is special legislation.

The statute forbids the qualification of any party "which is directly or indirectly affiliated, by any means whatsoever, with . . . any other foreign agency, political party, organization or government." While we have no doubt that the Legislature might properly deny the right to participate in a primary election to any political party which has subordinated itself to the control and direction of a foreign government, the sweeping language of this prohibition we think places it beyond the bonds of reason in so far as the Legislature's power to prescribe tests for participation in primary elections is

concerned. Such a prohibition would destroy the rights of suffrage of those members of any party which affiliated itself with a foreign organization however beneficial the purposes of such an organization or however far removed from the field of political action within this country. No attempt is made to limit the operation of this clause to those foreign agencies whose activities constitute a clear threat to the operation of our elective system, and we do not think that the Legislature's power to restrict the constitutional right of suffrage was intended to authorize the adoption of tests so far removed from the express purpose of improving the operation of the primary election system. This portion of the statute also must be held to exceed the power conferred upon the Legislature and to be invalid for that reason.

There is no doubt, however, that the remainder of section 2540.4 comes within the Legislature's power to prescribe tests and conditions for participation in primary elections. This power certainly includes the right to adopt tests designed to exclude those political parties advocating the overthrow of the government by unlawful means or those parties carrying on a program of sabotage, force and violence, sedition or treason. Such groups constitute an immediate threat to the functioning of our institutions, including the continued exercise of the right of suffrage. Since it is within the power of the state as to such groups to restrict even the rights of free speech and free press (see, for example, *Whitney* v. *California,* 274 U. S. 357 [47 S. Ct. 641, 71 L. Ed. 1095]; *Stromberg* v. *California,* 283 U. S. 359 [51 S. Ct. 532, 75 L. Ed. 1117]; *De Jonge* v. *Oregon,* 299 U. S. 353, 364 [57 S. Ct. 255, 81 L. Ed. 278]), it clearly was within the reasonable bounds of the Legislature's power to determine that these bodies should also be barred from the primary election ballot. Under such circumstances we have no doubt that the Legislature's power to exclude parties and individuals from participation in a primary election extends to those groups whose political beliefs create a clear danger to the continued existence of the institutions under which our constitutional form of government functions. Section 2540.4 of the Elections Code, omitting the invalid portions which are clearly severable, must be upheld as a proper condition for participation in primary elections in this state in the following form: "Notwithstanding any other provisions of this code, no party shall be recognized or qualified to participate in any primary election . . . which either

directly or indirectly carries on, advocates, teaches, justifies, aids or abets the overthrow by any unlawful means of, or which either directly or indirectly carries on, advocates, teaches, justifies, aids or abets a program of sabotage, force and violence, sedition or treason against, the Government of the United States or of this State.''

3. *Act requiring 2,500 registered members at the previous primary election.* (Elections Code, § 2540.5.)

In this statute (added by Stats. 1941, p. 3036) the Legislature sought to deny participation to political parties in any primary election "unless it appears to the Secretary of State, as a result of examining and totaling the statements of registration of voters and their political affiliations transmitted to him by the county clerks *25 days prior to the last preceding primary election,* that no less than 2,500 voters declared their intention of affiliating with that party." (Italics added.) It is now well established that the Legislature has power to establish tests for participation in a primary election based upon the number of votes cast for the candidates of a particular party in the last preceding election. (*Katz* v. *Fitzgerald, supra.*) The present statute sets up a similar test of numerical strength, except that it provides an absolute requirement to be met by all parties rather than one of several alternative requirements any of which would qualify the party for participation. (See Elections Code, sec. 2540 (a), (b) and (c).)

In adopting such a test of participation it is the Legislature's duty to preserve the integrity of the party system (see *Socialist Party* v. *Uhl, supra,* p. 792), and tests based upon the numerical strength of the party are sustained upon the theory that the party system will function more effectively if the primary election machinery is denied to those political parties which are made up of exceedingly small bodies of citizens. (See *Katz* v. *Fitzgerald, supra,* p. 436.) So long as the tests for participation were stated alternatively, as in Elections Code, sec. 2540, it is clear that any substantial party could establish its right to participate in the primary election under some one of the various numerical tests therein provided. Thus, the party could qualify if it had cast for one of its candidates 3 per cent of the total vote at the last preceding gubernatorial election. (Elections Code, sec. 2540 (a).) But failure to have cast this vote could not operate to deprive a substantial party of its present right to participate, however, since the party could also qualify by securing a petition

signed by at least 10 per cent of the voters of the state at the last preceding gubernatorial election (§ 2540 (c)) or by establishing that at least 1 per cent of the entire voters of the state at the preceding gubernatorial election had declared their present intention to affiliate with that party. (Sec. 2540 (b).) The adoption of section 2540.5, however, as an absolute prerequisite to participation in a primary election introduces a new, and exceedingly stringent, element into the Legislature's requirements. Failure to meet the provisions of section 2540.5, in other words, cannot be obviated by compliance with any alternative test; and, in our opinion, this consideration is an important factor in determining the validity of this legislation.

Any test based upon numerical data depends for its validity upon the theory that the Legislature is seeking to exclude from participation in the primary election (thus infringing rights of suffrage) only insubstantial groups the deprivation of whose rights can be justified by the larger good derived from a more efficient operation of the primary system. No one would contend that the Legislature has power under article II, section 2½, to adopt numerical tests which have the express purpose of ruling off the primary ballot those parties which clearly represent a large and substantial body of voters. If, therefore, the actual operation of section 2540.5 produces any such result, it cannot be held to be a test which is reasonably designed to accomplish the Legislature's purposes.

The complaint in this case alleges that by virtue of the vote polled by the Communist Party for its candidates in the gubernatorial election of November, 1938, it was entitled to and did participate, in the primary election held in August, 1940. It is alleged that the plaintiff party has fully complied with the requirements imposed by Elections Code, sec. 2540, but that it did not have 2,500 registered voters who declared their intention to affiliate with the Communist Party 25 days prior to the primary election of August, 1940. It is apparent, therefore, that if the provisions of Elections Code, section 2540.5 are held valid, the Communist Party cannot qualify for participation in the primary election of August, 1942, despite its ability to meet the tests of numerical strength which have been applicable in this state for many years. It should be noted that, although Elections Code, secs. 2570 and 2571, require that data on the number of registered voters in each party be transmitted to the secretary of the state

eighty days prior to each direct primary election and also twenty-five days prior thereto, the requirements for participation in section 2540.5 are measured by the information conveyed *twenty-five days before the last preceding primary election,* which ordinarily constitutes a period of two years. Since the provisions of section 2540.5 are made absolute, it is clear that no party, however substantial it might be, could participate in a primary election in this state unless it had 2,500 registered voters at a date two years prior to the time when it seeks to assert its right. In the case of a newly organized party the test imposes an absolute bar to participation in a primary election held after its organization because the right to participate is measured by events which transpired before it was in existence. Such a test cannot possibly avoid impairing constitutional rights of suffrage by barring from the ballot political parties which represent substantial numbers of citizens. Moreover, as already pointed out, the test applied must be reasonable. To adopt a test predicated upon the number of registered voters affiliated with a particular party two years in the past when information exists as to the present registration and where there is no alternative test, is to apply an arbitrary and unreasonable standard which does not tend to accomplish any proper legislative purpose. Section 2540.5 of the Elections Code, therefore, must be held to be invalid because it is not a reasonable exercise of the power possessed by the Legislature to establish tests and conditions for participation in primary elections.

 4. *Act conferring discretion to determine party doctrines.* (Elections Code, § 2540.9.)

This section of the statute (added by Stats. Fourth Ex. Sess. 1940, p. 362, sec. 3) provides: "The Secretary of State shall, with the advice and consent of the Attorney General, determine which parties are qualified to participate in any primary election. Such determination shall be subject to review by the courts in accordance with law." Insofar as this section applies to the numerical tests which are imposed upon any party seeking to participate in a primary election, it gives the same kind of power to the secretary of state which he already possesses under Elections Code, section 2540 (b) and (c), where his duties are ministerial in nature. The power delegated under this section is applicable to the portions of section 2540.4 which we have held valid, however, and there different considerations are controlling. When construed in conjunction with Elections Code, sec. 2540.4, it is apparent

that the effect of section 2540.9 is to vest in the secretary of state and the attorney general discretion to determine what political parties come within the prohibition of the statute as bodies which advocate the overthrow of the government or which are engaged in a program of force and violence. It has been held that before the constitutional right to vote may be taken away from a citizen, he must be given an opportunity to be heard in his own behalf. (*Pierce* v. *Superior Court,* 1 Cal. (2d) 759, 762 [37 P. (2d) 453, 460, 96 A. L. R. 1020]; *Ash* v. *Superior Court,* 33 Cal. App. 800 [166 Pac. 841].) We have held that where the party system is made an integral part of the elective machinery any attempt to bar a particular party from the ballot results in an infringement of the individual voter's right of suffrage. (*Supra.*) It follows that if the effect of the present statute is to restrict the constitutional right of suffrage and if such restrictions are made to depend upon an administrative determination as to the doctrines and beliefs of the political parties whose right to participate is challenged, an opportunity to be heard must be afforded those whose rights are subjected to attack. Elections Code, section 2540.9 vests in the secretary of state, with the advice and consent of the attorney general, the full power to determine what parties are qualified to participate in any primary election. No provision whatever is made for notice and hearing, nor is any time specified during which such a determination must be made. The provision that the determination "shall be subject to review by the courts" furnishes no protection to the political group which is disqualified if the disqualification is made immediately before the election, as is possible under the statute. Under such circumstances, if the determination as to a particular group were erroneous, the court's action could not repair the damage which would result from the temporary suspension of the party's right to participate in the election. It is our conclusion, therefore, that although the Legislature might properly bar from the primary ballot those parties which are described in the portions of section 2540.4 which we have held to be valid, the administrative provisions contained in section 2540.9 cannot be sustained as a proper means of ascertaining whether a particular party should be disqualified for its doctrines where fundamental rights of suffrage are involved. (*Cf. Lovell* v. *Griffin,* 303 U. S. 444, 451 [58 S. Ct. 666, 82 L. Ed. 949].) That section must therefore be held to be invalid. It does not

follow, however, that the provisions of section 2540.4 are thus rendered ineffective. The right of any party to participate in a primary election, if it is thought that the provisions of that section might operate to bar such participation, can be tested by a court proceeding brought under the provisions of Elections Code, section 2900. This, in effect, is the result of the present action brought under that section.

For the reasons stated, the court erred in sustaining general demurrers to the complaint. The judgment is therefore reversed, and the trial court is directed to issue its order to show cause as provided in section 2900 of the Elections Code.

Edmonds, J., Carter, J, Traynor, J., and Peters, J. pro tem., concurred.