[Civ. No. 17821. First Dist., Div. One. Dec. 1, 1958.]

MILTON KING, Respondent, v. STEWART LUDLOW, Appellant.

Edward A. Friend for Appellant.

Samuels, Thoits & Lehman and John W. Ellery for Respondent.

ST. CLAIR, J. pro tem.*—Defendant appeals from a judgment against him by the court, sitting without a jury, in an action to recover damages for personal injuries.

*Assigned by Chairman of Judicial Council.

## Statement of Facts

This action arose out of collision between an automobile being driven by plaintiff and one driven by defendant at the intersection of Seventh and Jackson Streets in Oakland, California. Seventh runs east and west and is a one-way street eastbound. Jackson runs north and south and is one-way southbound. Seventh Street is protected by an arterial stop on its north side, at Jackson, to stop traffic proceeding south on Jackson. There is no arterial stop on the south side of Seventh as normally traffic would not be proceeding northward on southbound one-way Jackson Street.

Plaintiff was proceeding east on Seventh about 30 and 35 miles per hour between 10 p.m. and 11 p.m. Defendant had inadvertently turned north into southbound Jackson Street at Sixth Street, i.e., one block south of Seventh Street. He proceeded north into the intersection of Seventh and Jackson Streets and was turning right into Seventh Street when his left front fender was hit by the front of plaintiff's car.

The plaintiff testified to having some drinks of whiskey before his evening meal. Defendant claims to dredge out of plaintiff's testimony admission of other drinks after dinner. In any event, there was further evidence of the amount of alcohol consumed by plaintiff.

Plaintiff put on the witness stand the officer who investigated the accident. On cross-examination he testified that at the hospital where he took the plaintiff for treatment they had, with plaintiff's consent, taken a blood test. Officer had in his possession a report of the results of that test. Without objection, he testified as follows: ''Q. What were the results of the blood test of Mr. King? A. The blood test submitted, the report submitted to us by Western Laboratories shows, it had a reading of .150% of 150 milligrams per 100 milliliters of blood, I believe is the way it is read. Q. An alcohol reading of .15, is that correct? A. .150. MR. ELLERY: Q. Did you say .150%? A. Yes. They have it marked percent. Q. .150%? A. Yes. MR. FRIEND: Q. From your experience as a police officer investigating traffic cases, do you know the significance of that reading? A. That is the point at which we normally prosecute for drunken driving. Q. It is starting at this reading —in other words, is that reading there where you prosecute for drunken driving? A. That is correct.''

The officer estimated plaintiff's speed at the time he noticed the danger from defendant's car at about 45 miles per hour and 30 miles per hour at the point of impact.

The witness Doll, a passenger in plaintiff's car, estimated plaintiff's speed at the time he first saw the defendant's car at between 30 and 35 miles per hour.

The defendant pleaded contributory negligence on the part of the plaintiff.

The court, sitting without a jury, found that the defendant "negligently and carelessly operated his automobile so as to cause, proximately and solely, a collision" of the automobiles and that "no negligent act or conduct of plaintiff contributed, proximately or at all, to the cause of said collision." Judgment for plaintiff was given in the amount of $2,704.88.

Faced with the above findings by the trier of the facts, defendant seeks to evade the normal binding effect of them on this court on the theory that, using plaintiff's evidence only, plaintiff is guilty of contributory negligence as a matter of law.

*Was the plaintiff guilty of contributory negligence as a matter of law because of the alcohol content of his blood?*

It is the defendant's contention that the significance of an alcoholic content of .15 per cent in the blood has become so well established in our society as to become a "law of nature" of which our courts may and should take judicial notice under the provisions of subsection 9 of section 1875 of the California Code of Civil Procedure.

The general nature of judicial notice and its scope is discussed in 18 California Jurisprudence 2d 439, section 19.

In *Communist Party* v. *Peek,* 20 Cal.2d 536, at pages 546-547 [127 P.2d 889], the court said: "The doctrine of judicial notice was adopted as a judicial short-cut to avoid necessity for the formal introduction of evidence in certain cases where there is no real need for such evidence. Before a court will take judicial notice of any fact, however, that fact must be a matter of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof. (See discussion 10 Cal.Jur. 693.) As was pointed out in *Varcoe* v. *Lee,* 180 Cal. 338, 344 [181 P. 223], 'if there were any possibility of dispute' the fact cannot be judicially noticed; and again (p. 345): 'It is truly said that the power of judicial notice is as to matters claimed to be matters of general knowledge one to be used with caution. If there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge evidence should be required.' "

The defendant takes the position that our courts have already taken judicial notice of the effect of .15 per cent alcoholic content in the blood. In the main he relies on *Lawrence* v. *City of Los Angeles*, 53 Cal.App.2d 6 [127 P.2d 931]. In a footnote to a statement that the blood in question showed .28 per cent alcohol the court in that case said: "It appears to be the consensus of the medical profession that when the blood alcohol concentrate of the driver of an automobile is 0.15 per cent (by weight) such fact is conclusive evidence that the driver is under the influence of alcohol. (Committee on Tests for Intoxication of the National Safety Council, Chemical Tests for Intoxication (1938) p. 5; see also for an excellent discussion of the subject *'The Medico-Legal Aspects of the Blood Test to Determine Intoxication,'* by Professors Mason Ladd and Robert B. Gibson, *The Iowa Law Review,* January, 1939, Vol. XXIV, No. 2, p. 191 et seq. . . .)" (P. 9.)

Unfortunately for the defendant's argument the court, in the body of the opinion, stated the applicable rule as follows, at page 8: "Opinions of qualified medical doctors as to whether an individual was intoxicated or not predicated upon the percentage of alcohol in the individual's blood, *though not conclusive,* are admissible when there is a proper preliminary showing that the blood tests upon which such opinions have been predicated have been properly conducted." (Emphasis supplied.)

The scientific fact does not appear to be as certain as defendant contends.

A résumé of the findings of various scientific studies is given in Ladd and Gibson, *The Medico-Legal Aspects of the Blood Test to Determine Intoxication,* 24 Iowa Law Review 191, 194-198, referred to in the above quoted footnote in the Lawrence case, *supra.* On the basis of these studies, it is said that a blood alcohol level of 200 milligrams per 100 grams of blood has been recognized in Sweden and Germany as determining with certainty a state of intoxication. These studies would indicate some uncertainty scientifically about recognizing as an invariable postulate that .15 per cent always indicates intoxication.

Defendant also points to the fact that statutes in other states have created a presumption that a person is under the influence of intoxicating liquor when the test shows .15 per cent or more by weight of alcohol in his blood. But the defendant ignores the fact the statutory presumptions in sister states are all made rebuttable presumptions. Arizona

Revised Statutes Annotated 1956, section 28-692, a portion of which is quoted in defendant's brief at page 12, also provides that the quoted paragraph "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor." Kentucky Revised Statutes Annotated 1955, section 189.520; New Jersey Statutes Annotated 1937, section 39:4-50.1 and Oregon Revised Statutes 1955, section 483.630, all contain similarly worded limitations. In Nebraska Revised Statutes 1943, section 39-727.01, the presumption is expressly stated to be rebuttable and to establish only a prima facie case.

In other words, authorities and statutes quite properly hold that the evidence as to the amount of alcohol in the blood is quite relevant to whether or not the person in question is under the influence of intoxicating liquor.

Our California courts have recognized the difference between the fact of being under the influence of intoxicating liquor and the fact of how the person in question is actually driving. See *People* v. *McGrath*, 94 Cal.App. 520, at 524 [271 P. 549], and also *People* v. *Marshall*, 48 Cal.2d 394 [309 P.2d 456], where the Supreme Court, in commenting on the McGrath case stated in the footnote at page 398: "The appellate court correctly holds that the offense of which defendant was convicted was not necessarily included in the offense charged, because a person can drive carefully even though he is under the influence of intoxicating liquor."

We hold that the results of having .15 per cent of alcohol in the blood is not such a law of nature that the court must take judicial notice that driving therewith is negligence as a matter of law.

*Was the plaintiff guilty of contributory negligence as a matter of law because of his speed?*

Defendant's argument here is not too clear. The prima facie speed limit on the street on which plaintiff was driving was 25 miles per hour, and plaintiff himself testified that he was driving at 30 to 35 miles per hour. It is established that exceeding the prima facie speed limit is not negligence as a matter of law. (*McSweeney* v. *East Bay Transit Co.*, 60 Cal. App.2d 807, 812 [141 P.2d 787], Veh. Code, § 513.) The defendant concedes this, but states that "where drunken driving is combined with speed, the legal conclusion that such driver was negligent is inescapable."

The defendant cites no authority for his statement and it would appear to be more properly addressed to the trial court. That court made an express finding that no negligent act of plaintiff proximately contributed to the cause of the collision, and that defendant's negligent and careless operation of his automobile proximately and solely caused the collision.

These findings would appear to find support in the evidence so as to make plaintiff's negligence, even if found as a matter of law, immaterial.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1959.