(112 App. Div. 755)

### HOYT v. J. E. DAVIS MFG. CO.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

TRIAL—MISCONDUCT OF COUNSEL—EXAMINATION OF VENIREMAN.

In an action against a corporation for injuries, counsel for plaintiff asked a venireman whether he was interested as agent or stockholder in any corporation insuring corporations against liability for negligence, and on objection the court stated that the question might be asked that counsel might determine the advisability of peremptorily challenging the juror. *Held*, that such question and the court's remark was improper, as tending to lead the jury to believe that an insurance company was the real defendant.

Appeal from Trial Term.

Action by Frank P. Hoyt against the J. E. Davis Manufacturing Company. Judgment in favor of plaintiff, and defendant appeals from an order denying a motion for a new trial. Reversed, and new trial granted.

This is an appeal by the defendant from an order denying the defendant's motion for a new trial upon the minutes. The plaintiff, while working in the defendant's factory upon a buzz planer, was injured by his fingers coming in contact with its knives, and brings this action to recover, claiming that the injury was caused by the defendant's negligence. The plaintiff had been at work upon this machine for about a month, and upon other like machines longer, and knew its condition and operation, and he is the principal witness as to the defects in the machine, of which defects he claims to have had knowledge for some time.

The machine consists of two tables, standing near each other. Between them is a small cylinder, from which two knives project, which cylinder revolves very rapidly, and thus planes the surface of the lumber; the operator steadying and pressing down on the lumber as it passes over the knives. On one side of this revolving cylinder is a gauge to keep the lumber in place as it goes against the knives. The lumber to be planed varies in width, and many times does not cover the entire surface of the revolving knives, so that at times they are partly uncovered and might injure the operator if he allowed his hands to come in contact with them. To avoid this danger, and for a rest upon which to pull back the piece after it is planed, a guard is used. This is of wood somewhat resembling a canoe paddle, fastened at the smaller end to the table by a bolt, and with the broader end upon the table between the operator and the board to be planed, so that it covers the exposed surface of the knives. Plaintiff claims that during the time he worked on this machine there was no nut upon the bolt, so that the guard was too loose, and the vibration of the machine caused it to move at times and thus exposed a part of the surface of the revolving knives, and that he had called the attention of his superior to this defect at different times and was answered that there was no nut. He also claims that there was no knifegrinder for a period of two weeks before the accident, and that the knives during that time became dull and were thus liable to cause the lumber to kick back, and that he had asked the foreman to cause the knives to be sharpened, and that upon that morning he had promised that it would be done. He also claims the belt was not properly adjusted. The plaintiff swears that while putting through this planer a small piece of board about 10 or 12 inches long, in which there was a knot, he was compelled to bear down heavily upon the board to keep it upon the knives, the machine slackened, the board kicked back, and his hands in some way came in contact with the knives. The evidence of the defendant tended to show that the guard was secured in the usual and proper manner, that the knives were kept in proper order, that a knifegrinder was constantly employed, and that the belt was properly adjusted.

While examining the jurors as to their qualifications, plaintiff's counsel asked the following question: "Are you interested as agent or stockholder

in any insurance company insuring corporations against liability for negligence,"—which was objected to by the defendant as not a proper form of examination of a juror, to which the court replied: "Counsel may ask the question for the purpose of determining whether he will peremptorily challenge the juror or not." The defendant excepted, and the juror was sworn.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Davis & Lusk (Rowland L. Davis, of counsel), for appellant.
Dickenson & Duffy (Edwin Duffy, of counsel), for respondent.

JOHN M. KELLOGG, J. The plaintiff's case depends almost entirely upon the credit which he is given as a witness, and it is evident that his evidence is not always reliable. It is improbable that the foreman told him there was no nut for this bolt, for the evidence shows that nuts to fit this bolt, a kind in common use, were in great quantities in different places around the factory to the knowledge of the employés. The witness Tower swore that he had worked in the factory for two or three weeks prior to the accident, and that there was no knifegrinder there. The evidence is very conclusive that Tower did not begin work in the factory until March 1st; the accident occurring March 3d. The evidence is clear that the bolt upon the guard was properly secured by a nut, and that a knifegrinder was employed in the factory all the time. It is very clear that the knives were in proper condition, and that the machine was not defective in that respect. It is unnecessary to go through the evidence of the various witnesses. The plaintiff is contradicted upon every substantial point of his case by many disinterested witnesses, and by circumstances which seem to be significant. The evidence of many witnesses tends to show that the plaintiff persisted in wearing a glove upon his hand while operating the machine, against the caution of his superiors and his co-employés, he being told that it was liable to cause his fingers to be caught in the machine; and the glove was found upon the machine, with the back of the hand torn off, immediately after the accident. Plaintiff seeks to explain this by Tower swearing that the day before the accident the plaintiff requested him to cut off the fingers on the palm side of the glove so that the fingers would be free, saying that he was afraid he would get caught in the machine, and that afterwards the plaintiff put on the glove and used it. The plaintiff denies that his superiors cautioned him, and swears that the day before the accident he had Tower cut off the fingers on the palm side of the glove, for the reason that they had got worn out on the hand and were no use and had some fringe there. It is quite apparent that the plaintiff was using the glove at the time of the accident, and that he and everybody else in the factory believed that it was unsafe and was liable to cause just such an accident as did happen. A careful perusal of the evidence and a consideration of all the facts lead to the conclusion that the verdict is not sustained by the evidence. In a case where the evidence is so strongly to one side, a small circumstance may have influenced the jury, and in this case we look for the circumstance. It is held by the Court of Appeals in Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494, that the mere asking a question of a witness in a negligence case whether there was an accident insurance in favor of the defendant

is improper practice, and may fairly call for a reversal of the judgment when it probably influenced the result. If the plaintiff's counsel in this case had been really desirous to know whether the jury in this agricultural county, far removed from the large cities, were stockholders in a company insuring against accidents, he probably would have been satisfied by asking if any of the jurors were stockholders in any corporation. If any of the farmers, mechanics, or tradesmen who would naturally constitute such jury had answered they were, it would have been easy to find what kind of corporations they were interested in, and whether they were agents for such a corporation would naturally be answered by finding what the business of the various jurymen were. Many other questions easily suggest themselves which would naturally draw out the necessary information without an appeal to the prejudice of the jury. It is evident that the counsel was not desirous of knowing whether the jurors were interested in companies insuring against accident, but he limited the question to companies insuring corporations against accident, thus making it more suggestive to this case. It is quite evident that this question was asked for the sole purpose of suggesting to the jury that this company might be, or probably was, insured against accident, and that the plaintiff, if he recovered, would be paid practically by the insurance company which was paid for just such risks. The language of the court might have conveyed to the minds of the jurors the impression that the answer "Yes" to that question would have rendered the juror subject to challenge. It seems that the question of the counsel and the language of the court may have, and very probably did, suggest to this jury that this was a case where in reality an insurance company and not the defendant was upon trial.

The respondent's counsel calls attention to the fact that this question was taken verbatim from Grant v. National Railway Spring Co., 100 App. Div. 234, 91 N. Y. Supp. 1096, and assumes that it is justified by that decision. There, when such a question was asked, the trial court discharged the jury, imposed the costs of the term upon the plaintiff, and, upon appeal, the order was reversed; the court saying it could not inquire into the motive of counsel, and the asking of such a question did not warrant the order. Here the plaintiff has obtained a verdict in a case where the evidence was decidedly against him, and it is probable that some extraneous matter entered into the consideration of the jury, and it seems that the question and the ruling might well have prejudiced the jury, and it is more natural to explain the verdict in that way than in any other suggested. Every suitor is entitled to a fair and impartial trial, and to have the verdict of the jury rest upon the law and the facts of the case entirely unprejudiced by outside considerations. A defendant corporation on trial in a negligence case has enough to meet the case upon the merits, and ought not to be required to meet suggestions which are thrown out, the only effect of which are to prejudice the jury or to get into their minds something which ought not to be in the case. And when counsel ask such questions, overreaching the limit, with a hope to gain a benefit from them, it is but fair that he should take the risk, and in a close case the court may properly consider that such suggestion had the very effect which counsel intended it should have. It is

unnecessary to decide that the asking of such a question is a legal error which calls for the reversal of a judgment, but it should be understood that such questions are dangerous, and, when asked without good reason, may be very unprofitable to the party who asks them. While in this case it is clear that the verdict is unsupported by the evidence, a new trial under the circumstances is not to be regretted.

The verdict is against the evidence, and is not fairly sustained by it, and the order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. It is therefore unnecessary to consider several rulings in the case which otherwise might require serious consideration.

CHESTER, J., concurs. SMITH and COCHRANE, JJ., concur in result. PARKER, P. J., not voting.

---

(113 App. Div. 133)

## GARDNER v. SCHENECTADY RY. CO.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

1. EVIDENCE—ADMISSIONS BY AGENT OR EMPLOYÉ—NEGLIGENCE.

In an action against an electric company for death of its street lamp trimmer, killed by an electric shock while in the performance of his duty, testimony of a witness that a former superintendent of the company had condemned the hoods of the lamp, and that he heard him say that the hoods were no good, that they were not safe, is not admissible against the company.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 908.]

2. MASTER AND SERVANT—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE.

Evidence in an action against an employer for death of an employé, killed while trimming an electric lamp in the course of his duty, held insufficient to sustain a verdict against defendant.

Chester, J., dissenting

Appeal from Trial Term.

