[Civ. No. 4323. Third Appellate District.—July 23, 1931.]

BIRDENE WIECK, a Minor, etc., Respondent, v. WILLIAM HOCKETT et al., Defendants; H. HAMAGUCHI, Appellant.

B. P. Gibbs, Theodore Hale, Carroll B. Crawford and M. Tellefson for Appellant.

F. M. Ostrander for Respondent.

PRESTON, P. J.—This is an appeal by the defendant H. Hamaguchi from a judgment entered against him upon a

verdict of a jury in the sum of $3,750 in a case for personal injuries.

Plaintiff Birdene Wieck, a minor, and W. A. Wieck, her father brought this action for damages against defendants, William Hockett and H. Hamaguchi, charging that Birdene Wieck was severely and permanently injured by reason of the negligent operation by said defendants of their respective automobiles. No judgment was entered against William Hockett.

The answer of H. Hamaguchi denies any negligence on his part, and as a separate defense, alleges negligence on the part of plaintiff, constituting the sole and proximate cause of her injuries.

The accident occurred on the twenty-seventh day of November, 1928, at about 11 o'clock in the morning at the intersection of Walnut Avenue and Sultana Drive situate about one mile east of the town of Livingston, in Merced County. Walnut Avenue and Sultana Drive, including the intersection thereof, are dirt roads about 40 feet in width between the property lines. Walnut Avenue, which runs east and west, had been graded and smoothed off just before the accident, so that practically the entire width of the road could be traveled with an automobile. Sultana Drive runs north and south.

The evidence is conflicting as to whether Sultana Drive was only a one-way road or whether the entire width could be traveled. However, the whole of the intersection was traversable. There was also evidence that on two corners there were grape-vines and on the other corner there was a bamboo windbrake seven or eight feet high.

The defendant Hamaguchi drove his Essex touring car in a northerly direction on Sultana Drive. William Hockett, with whom plaintiff was riding as a guest, was driving his Chevrolet car in a westerly direction on Walnut Avenue. The two machines collided in the intersection and just northwest of the center thereof. The Chevrolet turned upside down at a point about twenty feet westerly from the point of impact, pinning the plaintiff underneath the car and inflicting the injuries of which she complains.

The Essex car came to a stop in approximately the same distance and was about three feet south of the other car.

■ Hamaguchi testified to facts, which if believed by the jury, would show that the collision was due solely to the negligence of Hockett, the driver of the Chevrolet, and Hockett, on the other hand, testified to facts showing that H. Hamaguchi was entirely responsible for the collision. Under such circumstances, and when the verdict is attacked for insufficiency of evidence, as it is in this case, our power begins and ends with the inquiry whether there is substantal evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury.

■ We must assume that the jury resolved the conflict against H. Hamaguchi. We have examined the entire testimony with care, and after such examination feel fully satisfied that the record contains ample competent evidence to support the verdict of the jury. The jury, however, might well have found from the entire evidence that both Hockett and Hamaguchi were guilty of actionable negligence.

■ Appellant contends that plaintiff and her counsel were guilty of prejudicial misconduct at the trial in asserting that plaintiff had been examined by a doctor at the request of the defendant's insurance company. This contention is based upon the following proceedings which took place during the direct examination of plaintiff by her own counsel:

· "Q. And where did you go when you got to Livingston? A. Dr. Rookledge's office. Q. What was done there, if anything? A. Well, he put my arm in a sling, he did not do hardly anything, he did take X-rays and then he put my arm in a sling, and then I was taken to Merced. Q. What doctor took care of you there? A. Dr. Kylberg. Q. Now, you saw Dr. Rookledge immediately after the accident, and then Dr. Kylberg set your arm at the hospital, did you see any other doctor? A. Yes, *Dr. Zirker and Mr. Hamaguchi's Insurance Company's doctor.*" Mr. Hale (attorney for defendant Hamaguchi): "Now, one moment, we move that be stricken out, how did she know that?" Witness answering: "A. Well, it was at your request *that I went to this doctor, and you stated in your office that it was for the insurance company that you were having the examination.*" Mr. Hale: "I move that be stricken out, your Honor, that has nothing to do with this defendant, and we move the jury

be instructed to disregard it, that statement, that was purely an interpolation on the part of this witness, no doubt by the instructions of someone." Mr. Ostrander, attorney for plaintiff: "Now, if the Court please, she states that she went to see the Insurance Company doctor at Mr. Hale's request." Mr. Hale: "Now, I move that any further discussion of this point cease right here, and that the jury be instructed to disregard that part of her testimony, and that that part be stricken out. .·. . " After some further colloquy between the court and counsel, Mr. Ostrander said: "I have no objection if the court desires to strike that portion of the answer, that that is a conclusion that the insurance company doctor, at Mr. Hale's suggestion; that she went to this doctor, I think though, that is material and relevant." Mr. Hale: "At Mr. Hamaguchi's suggestion, I was his attorney, acting for him and requested her to go to the doctor." The Court: "All right, that is before the Court. Let the rest of it go out. Any statement in reference to an insurance company, let that be stricken from the record and the jury will not regard any testimony that is ordered stricken out by the Court." . . . Mr. Hale: "The title of the case is 'Birdene Wieck, a minor, by W. A. Wieck, guardian *ad litem,* and W. A. Wieck, *versus* William Hockett and H. Hamaguchi.' " The Court: "Call it to the attention of the jury, the parties who are before the Court." Mr. Ostrander: "Birdene Wieck, a minor, by W. A. Wieck, guardian *ad litem;* and W. A. Wieck, *versus* William Hockett and H. Hamaguchi." The Court: "Ladies and gentlemen of the jury, now, those are the parties before this court, *and no others,* Birdene Wieck, a minor, by W. A· Wieck, her guardian *ad litem,* and W. A. Wieck, they are the plaintiffs in the case, against William Hockett and H. Hamaguchi, those two parties are the defendants, *and there are no others, and any reference that may be made to any other parties here, you are not to take into consideration at all in your verdict whatever.* You are to determine who is responsible for this accident at the time, as between these parties that are before the Court here now, *and nobody else,* and on stiptulation of counsel, this reference that was made by the witness here, to the statement of Mr. Hale, counsel for the defendant, that he wanted her to be examined by a doctor for the insurance company—is that it—I have

forgotten the exact language—'' Mr. Ostrander: ''Yes.'' The Court: *"Let that go out, forget that such statement was ever made."*

The question that brought from the witness the answer complained of was entirely proper and the answer was an attempt by a fifteen year old girl, who was not at all familiar with court procedure, *to identify the other doctor who had examined her and whose name she could not recall.* Counsel for defendant brought from the witness the further objectionable remark. The witness undoubtedly thought that counsel was addressing her. The judge struck all remarks from the record and at the same time admonished the jury in the plain and unequivocal language above set forth. There is absolutely nothing in the record from which it could be inferred or insinuated that plaintiff's counsel did not ask said question in the utmost good faith or that he attempted in any way to get before the jury the fact, if it be a fact, that the defendant was insured. His entire conduct appears to have been eminently fair and proper. The trial court denied a motion for a new trial based, among other things, upon this same alleged misconduct, and in so doing must have concluded that the witness' remarks were not prejudicial.

In *Lafargue* v. *United Railroads of S. F.*, 183 Cal. 720 [192 Pac. 538, 540], the Supreme Court said: ''The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney. In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. . . . The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong.'' (See *Mangino* v. *Bonslett*, 109 Cal. App. 205 [292 Pac. 1006].)

The remarks of plaintiff were improper, but we cannot assume that a jury will deliberately disregard their oaths and an instruction of the court so plain and explicit as the one given by the learned trial court in this case and assume prejudicial error from the mere fact that the plaintiff, a

child, while a witness in her own behalf, in an attempt to identify one of the physicians who had examined her, stated that "he was H. Hamaguchi's Insurance doctor", etc. There is no showing or even a suspicion that she had been prompted to make the remarks complained of or that there was any intention on her part or that of her counsel to intentionally get the question of H. Hamaguchi's insurance before the jury.

■ Appellant next contends that the verdict was excessive. The motion for a new trial was also made upon the following grounds:

"10. Excessive damages appearing to have been given under the influence of prejudice;

"11. Excessive damages appearing to have been given under the influence of passion." (Subd. 5, sec. 657, Code Civ. Proc.)

"The rule is well established that the amount of damages in this kind of an action is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court who in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and the jury upon the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury'." (*Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100, 1102], and cases there cited; *Michener* v. *Hutton*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238], *Sundberg* v. *Ringel*, 100 Cal. App. 545 [280 Pac. 557], and *Levy* v. *Berner*, 110 Cal. App. 65 [293 Pac. 896].)

We have carefully examined the entire record, including the evidence, and there is nothing in the record to show or suggest that the verdict was not the result of the fair and honest judgment of the jury. At the time of the accident plaintiff was a girl of fifteen years of age, in good health. She was pinned underneath the Chevrolet car and when extricated was unconscious. She received a fracture of the neck of the humerus and suffered a permanent limitation of motion in her right arm and shoulder. This injury was attended with excruciating pain and suffering which lasted several months. At the time of the trial one shoulder was

larger than the other. The arm was in what is known as an airplane cast for more than two months. We think when the extent and character of the injuries received by the plaintiff and the pain and suffering endured by her are all considered the award of damages made by the jury and sustained by the trial court is not at all disproportionate to the compensation really warranted by the facts.

Appellant also complains of certain instructions given by the court to the jury. We have examined all of the instructions complained of and find no merit whatever in any of the points urged. It is certainly a well-settled rule of law, which needs no citation of authority, that all instructions must be taken as a whole, and when that rule is applied in the case at bar, there is no error in the instructions. They are full and complete and state the law applicable to the case clearly and concisely.

Other contentions made by appellant need no special consideration. We have examined the entire record with care and find no merit whatever in the appeal.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.