[Civ. No. 14311. Second Dist., Div. One. Feb. 29, 1944.]

BLANCHE ELFORD et al., Respondents, v. MARY E. HILTABRAND, Appellant.

C. A. Pinkham and Schell & Delamer for Appellant.

Arthur C. Miller and Lee A. Solomon for Respondents.

WHITE, J.—Plaintiffs, who are mother and daughter, instituted this action to recover damages for personal injuries sustained as the result of a rear end collision between two automobiles, both of which were proceeding in a general northerly direction along Highway No. 6, commonly known and referred to as the ''Mint Canyon Road''; in the county of Los Angeles. For some distance north and south of where the collision occurred the highway is divided into three traffic lanes, designated by white painted lines. The two outer lanes are respectively 13 feet in width, while the center or passing lane measures 11 feet in width.

At approximately 5 o'clock on the afternoon of November 27, 1942, while it was still daylight and the road was dry, defendant Mary E. Hiltabrand, with three passengers, was driving in a general northerly direction on the highway in question. The plaintiff Blanche Elford, accompanied by the minor plaintiff Dorothea Mae Elford and two other children, was driving in the same direction, following defendant's vehicle. The accident occurred on a bridge which overpasses the Southern Pacific Railroad tracks. From a review of the testimony we feel that the same may be fairly epitomized by saying that the only car in sight ahead of plaintiffs' was that of the defendant, and the only vehicle following was a quarter of a mile away. Plaintiff Blanche Elford testified

that she first observed defendant's car as the latter was "coming down the grade" approaching the bridge; the south end of the east side of which bridge is visible for between three and four miles as one approaches it. At the time of this initial observation of defendant's automobile by plaintiff Blanche Elford, the former's vehicle was "approximately 200 feet ahead." At this time plaintiffs' speed was 35 miles per hour and both cars were traveling in the extreme easterly traffic lane. According to the testimony of plaintiff driver she continued to observe defendant's car up to the time of the collision, and noticed that as the latter's automobile "dropped into the valley" it was slowed down to "about 25 miles per hour"; that upon starting up the grade defendant speeded up her car and plaintiff driver did likewise. During all of this time a distance of approximately 200 feet separated the vehicles. As plaintiff driver's automobile entered upon the bridge she noticed that the distance between her car and the defendant's was only about 50 or 60 feet. Plaintiff driver testified that the defendant brought her car to a sudden stop on the bridge whereupon plaintiff driver applied her brakes and "gave them all she had"; that at the time of making the brake application she was 18 to 20 feet distant from defendant's automobile and driving between 20 and 25 miles per hour. A rear end collision between the two automobiles ensued. Plaintiff driver also testified that the defendant gave no visible signal prior to making a sudden stop upon the bridge or overpass.

According to defendant's testimony when she was within a quarter of a mile of the point of impact she noticed a railroad train approaching the bridge on the tracks below, and at that point she commenced to slow down her automobile in order to be upon the bridge when the train passed underneath thereof so that the children riding with her could view the train passing below. Defendant denied that she stopped upon the bridge at any time and maintained that at the moment of the collision she was proceeding at a rate of speed estimated as between 5 and 10 miles per hour.

One disinterested witness, who arrived upon the scene following the accident, testified that when she inquired of defendant as to how the accident happened the latter stated: "We stopped for the children to see the train go by." Testimony to the same effect was also given by another disinterested witness.

Upon being struck the defendant's automobile proceeded on to a point approximately 125 feet from the point of collision where it came to rest. The force of the impact broke the backs of the two front seats of defendant's car which was a 1937 Chevrolet sedan. Plaintiff was operating a Ford V-8 automobile which, according to her testimony, was in good mechanical condition and was equipped with good tires.

The cause proceeded to trial before a jury, resulting in a verdict in favor of plaintiff Blanche Elford for $2,500 and in favor of the minor plaintiff Dorothea Mae Elford for the sum of $1,000. At the conclusion of plaintiffs' case the defendant moved for a judgment of nonsuit against both plaintiffs, which motions were denied. Following rendition of the verdict defendant, reserving her right to move for a new trial, moved the court to enter judgment in her favor notwithstanding the verdicts. This motion, made as to each plaintiff, was denied, as was a subsequent motion made by defendant for a new trial. From the judgments entered upon the aforesaid verdicts, defendant prosecutes this appeal.

As a first ground for reversal it is contended that the court erred in refusing to declare a mistrial. In that connection the record reveals that during the *voir dire* examination of prospective jurors plaintiffs' counsel inquired of the veniremen and women under examination: "Q. Is there any one of the jurors who is interested in the General Accident Insurance Company of America? Mr. Pinkham (defendant's counsel) : Just a moment, if the court please, I ask the court at this time to instruct the jury there is no insurance company involved in this case, there is no insurance company a party to the action. The Court: That is true, no insurance company is involved that is a party to this case. Q. (Mr. Solomon, plaintiffs' counsel): I take it there is no one of you who is a stockholder in the General Insurance Company of America—— Mr. Pinkham: Just a moment, may we approach the bench? The Court: Yes."

Thereupon, at the bench and outside the presence of the jury, defendant's counsel moved the court to declare a mistrial and call another jury panel, which motion was denied. Upon resumption of proceedings in the presence of the jury, plaintiffs' counsel again propounded the same interrogatory, whereupon the following transpired: "Mr. Pinkham: I again repeat that now you have repeated it the second time after

the court has instructed the jury, that the court should declare a mistrial and discharge the jury. Mr. Solomon: I asked the question in good faith believing it is a proper question.''

Thereupon, the court and counsel adjourned to chambers where, outside the presence of the jury, after discussion, the court again denied defendant's motion to declare a mistrial. Upon resuming the trial with the jury present, the following proceedings were had: ''The Court: In the examination of prospective jurors for service in the trial of this case, questions were asked by counsel to learn whether any juror had an interest in a casualty insurance company. This was done for the sole purpose of discovering if any of you had a biased viewpoint. You are reminded that no insurance company is a party to this action and that whether either party is insured, has no bearing whatsoever on any issue that you must decide. Therefore, the oath you took as jurors requires that you refrain from any inference, speculation or discussion about insurance. You may proceed.'' Thereupon, in the presence of the jury, defendant's motion for a mistrial was formally denied.

■ Attempts to impress a jury with the idea that an insurance company and not the individual defendant may be required to respond to such damages as the jury may assess are not looked upon with favor by the courts. This, because such knowledge as to a defendant's protection in that regard may tend to make jurors careless as to the amount of their verdict (*Arnold* v. *California Portland Cement Co.*, 41 Cal. App. 420, 425 [183 P. 171]; *Levens* v. *Stocco*, 5 Cal.App.2d 693 [43 P.2d 357]). Such questions are restricted to those that are reasonably necessary to ascertain whether prospective jurors are free from a bias or interest that may affect their verdict. And the cases are harmonious in holding that all such questions must be propounded in good faith. The test of good faith upon the part of counsel would seem to be whether such interrogatories are propounded in a manner as to necessarily convey the impression that a defendant is in fact insured. ■ However, in the instant case the court, as heretofore indicated, decisively and squarely admonished the jury that no insurance company was a party to the action and that under their oaths as jurors they were required and bound to ''refrain from any inference, speculation or discussion about insurance.'' Furthermore, in the instant case the challenged questions remained unanswered, and at

the trial, when plaintiffs' counsel protested that he asked the question in good faith and "believing it is a proper question," defendant's counsel stated "I believe you did ask it in good faith." By its action in denying a motion for a mistrial based upon the ground of misconduct of plaintiffs' attorney, the trial court must be deemed to have concluded that the questions were asked in good faith and that no prejudice resulted therefrom. Under the circumstances presented by the record before us, we would not be justified in disturbing such conclusion in holding that a reversal is required.

Passing now to the consideration of claimed errors in the refusal of the court to give certain instructions proffered by the defendant, it appears that the court instructed the jury that section 544 of the Vehicle Code provides that no person shall stop or suddenly decrease the speed of a vehicle on a highway without first giving to the driver of any vehicle immediately to the rear, an appropriate signal in the manner provided by such Vehicle Code, when there is opportunity to give such signal. And further, that section 546 of the same code prescribes the method of giving such signals, which method insofar as pertinent to the instant case is governed by subdivision (c) of the last mentioned section, which reads: "(c) Stop or sudden decrease of speed signal—hand and arm extended downward beyond the side of the vehicle." ▇ In view of the foregoing instructions given to the jury, appellant contends that the court committed prejudicial error in rejecting the following instruction offered by her: "I have heretofore instructed you that Section 546 of the Vehicle Code of the State of California provides and at the time of this accident provided that all signals required given by hand and arm shall be given from the left side of a vehicle in the manner described in such instruction and in said section. I further instruct you, however, that at the time of the happening of this accident Section 545 of the Vehicle Code of the State of California was likewise in full force and effect and reads as follows: '545. Signals by Hand and Arm or Signal Device: The signals herein required shall be given either by means of the hand and arm or by signal lamp or mechanical signal device of a type approved by the department, but when the body of a vehicle or the body or load on any vehicle in a combination

of vehicles projects 32 inches or more to the left of the center of the steering wheel, or under any condition when a hand and arm signal would not be visible both to the front and rear of such vehicle or vehicles then such vehicle or vehicles must be equipped with and said signals must be given by such a lamp or device'." Appellant insists that in view of her testimony that her automobile was equipped at the rear with a stop light of the "flasher light" type and that the same was in good working order to her personal knowledge about an hour prior to the accident, the jury should have been advised that the law of this state (sec. 545, Veh. Code) permits the signals required by sections 544 and 546 to be given either by hand or by a mechanical device. Appellant asserts that if the jury believed from all the evidence that she did actually stop her vehicle on the bridge, they could have found, had the instruction in question been given, that an appropriate signal and warning had been given of appellant's intention to stop. There are several answers to appellant's claims. In the first place the evidence is in conflict as to whether the signal claimed to have been displayed by the stop light flashed at a time just prior to the collision. Respondent driver having testified that she did not see any signal given, either mechanical or by hand. Secondly, the record is barren of any evidence that the stop light on appellant's vehicle was such a mechanical or electrical device which had been examined or approved by the Division of Motor Vehicles of the State of California as required by section 545 of the Vehicle Code (*Hardin* v. *Sutherland,* 106 Cal.App. 473, 481 [289 P. 900]; *Wohlenberg* v. *Malcewicz,* 56 Cal.App.2d 508, 512 [133 P.2d 12]). The record therefore, contains no evidence which would excuse appellant for her alleged failure to observe subdivision (c) of section 546 of the Vehicle Code, and it was not error for the court to reject the proffered instruction.

As her next ground of appeal appellant assigns as prejudicial error the refusal of the court to instruct the jury as to the existence in our laws of section 597 of the Vehicle Code, and which refusal was, by the court, grounded upon the claim that no evidence was offered which warranted such an instruction. In this regard appellant offered the following instruction: "I instruct you that at the time of the happening of this accident Section 597 of the Vehicle Code

of the State of California was in full force and effect and reads as follows: '597. Mountain Driving. The driver of a motor vehicle traveling through defiles or canyons or upon mountain highways shall hold such motor vehicle under control and as near the right hand edge of the highway as is reasonably possible and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with the horn of such motor vehicle.' "

While conceding that there was no direct testimony offered that the highway upon which the accident occurred comes within the definition of the quoted Vehicle Code section, appellant contends that two photographs and a diagram received in evidence warranted the giving of the instruction in question; and that in any event, the trial court could take judicial notice of the general topography of the country and its surrounding terrain. In the absence of any testimony as to the character of the highway at the point involved herein, we do not feel justified in holding that the documentary evidence referred to conclusively warrants the conclusion that the terrain in question should be characterized as the type designated in the code section, and that the refusal of the court to instruct the jury as requested constituted reversible error. ■ Nor do we think that the character of the territory adjacent to the place where the accident occurred on this particular highway is of such common and universal every-day knowledge as a mountain highway, that the court was required to take judicial notice of such fact. Such common knowledge existed as to the facts judicially noticed in *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719, 726 [125 P.2d 586]; *Mogle* v. *Moore*, 16 Cal.2d 1, 4 [104 P.2d 785]; and *Vela* v. *Huberty*, 1 Cal.2d 466, 467 [35 P.2d 531], cited by appellant. ■ It is only where sufficient notoriety attaches to a fact that it is proper to assume its existence without proof. Whenever there is possibility of dispute judicial notice cannot be taken of the existence of a claimed fact (*Communist Party* v. *Peek*, 20 Cal.2d 536, 546 [127 P.2d 889]). ■ Furthermore, the doctrine of judicial notice of matters claimed to be of common and general knowledge should be cautiously exercised (*Communist Party* v. *Peek, supra*).

Appellant's final claim may be summarized in the fol-

lowing quotation from her brief: "Considering the evidence as a whole and in the light most favorable to respondents it is clear that in the operation of her automobile the respondent Blanche Elford failed to exercise ordinary care but on the contrary paid not the slightest heed to what might lie ahead of her as she proceeded along the highway and that her negligence solely and proximately caused the injuries and damage of which respondents complain."

■ It cannot be regarded as the law that an automobile driver is necessarily guilty of negligence because he collides with the rear of another vehicle (*Wohlenberg* v. *Malcewicz, supra*). Each case must be governed and judged under its own facts. And we are not here concerned with the law applicable to a case where the driver of the vehicle ahead stopped, pursuant to a traffic signal, or under circumstances where, under the law, the driver was required to make a sudden stop. ■ From the facts here present the jury could have concluded that respondent driver was denied a sufficient opportunity to avoid a collision with the rear end of appellant's automobile because of the jury's belief that the latter's negligence in failing to give the appropriate signal required by sections 544 and 546 of the Vehicle Code; or the jury could have concluded that defendant was guilty of negligence in stopping upon a bridge under circumstances which violated subdivision (j) of section 586 of the Vehicle Code; and that either or both acts of negligence on the part of defendant contributed proximately to the happening of the accident. Depending as it does upon the circumstances of each individual case, the question of whether the driver of the vehicle in the rear was negligent in colliding with the car in front is essentially a question of fact and not of law. It is, therefore, addressed primarily to the triers of fact. Conceding that the evidence is conflicting and that more than one conclusion can be reasonably drawn therefrom, nevertheless the question of whether the negligence of one driver or both was the proximate cause of the accident is one of fact, and time and again it has been held that if there be substantial evidence to support the determination arrived at by the jury, it cannot be disturbed on appeal.

From what we have herein stated it follows that the judgments and each of them must be affirmed. It is so ordered.

York, P. J., concurred.

DORAN, J.—I dissent. It is my conviction that the questions asked on *voir dire* were highly prejudicial and that the court's refusal either to declare a mistrial or grant defendant's motion for a new trial on account thereof was error.

It is conceded in the prevailing opinion that, "Attempts to impress a jury with the idea that an insurance company and not the individual defendant may be required to respond to such damages as the jury may assess are not looked upon with favor by the courts." And the prevailing opinion further recites, "the cases are harmonious in holding that all such questions must be propounded in good faith." For example, in *Lafargue* v. *United Railroads,* 183 Cal. 720 [192 P. 538], was concerned with alleged misconduct resulting from the examination of witnesses and statements of counsel. In that connection the court observed (at p. 725): "We certainly cannot say that there was any intent on the part of counsel to get before the jury matters which he *knew* were inadmissible. It seems to us from the record that he was acting in perfect good faith upon the theory that he was entitled to rebut the inference of recovery which might be drawn by jurors from plaintiff's discharge from St. Luke's Hospital, . . ." *Dermer* v. *Pistoresi,* 109 Cal.App. 310 [293 P. 78], was an action for personal injuries. Misconduct was assigned to plaintiff's counsel for disclosing the interest of an insurance company during the examination of a witness. In that connection the court observed (at p. 315): "This was a perfectly legitimate cross-examination of the witness. It does not appear to have been conducted in bad faith." *Wieck* v. *Hockett,* 115 Cal.App. 600 [2 P.2d 476], was also a personal injury action. Reference to an insurance company by plaintiff's counsel during the course of the trial was assigned as misconduct, with reference to which the court commented as follows, at page 605: "There is absolutely nothing in the record from which it could be inferred or insinuated that plaintiff's counsel did not ask said question in the utmost good faith or that he attempted in any way to get before the jury the fact, if it be a fact, that the defendant was insured." (*Arnold* v. *California Portland Cement Co.,* 41 Cal.App. 420 [183 P. 171].) In this action for damages for personal injuries the court went into the subject at great length, and I am in substantial accord with the court's comments and conclusions in this decision, with the exception of

the reference to the subject of good faith, which is as follows (p. 426). "Asking a juror whether he is interested in a specified casualty company, or, generally, in any insurance company, if the question be propounded in good faith, may be necessary . . . ." In *McVea* v. *Nickols,* 105 Cal.App. 28 [286 P. 761], a personal injury action, prejudice was assigned to the inquiry regarding an insurance company. The District Court of Appeal in upholding the judgment made the following pertinent observation (at p. 33): "Appellant concedes that the decisions are against his contention, but urges that we change the law, on account of the impossibility of proving that such questions are not asked in good faith, and because of the more or less obvious dangers that are inherent in permitting such an impression or suggestion to reach the jury. While we have some sympathy with appellant's point of view, we feel that the rule has been sufficiently established to require that any change, or consideration thereof, should come from the Supreme Court."

Misconduct that results in prejudice is no less prejudicial because committed in good faith. Damage resulting from an act performed in good faith is just as painful as if done in bad faith. By no process of logical reasoning can the question as to the effect of improper conduct, either in the examination of jurors on *voir dire* or in the examination of witnesses, be determined by a consideration of the good or bad faith of the inquirer. The innocent victim gets no comfort from the assurance that such misconduct is the product of good faith. Nor is it ever possible to know definitely whether such misconduct is really performed in good faith. Bad faith can easily be concealed by cunning subterfuge.

In determining the extent of damage or prejudice the intent of the inquirer is clearly beside the issue. The damage is no less extensive when the cause is unintentional.

Here the cause was aggravated. When objection was made and the question assigned as misconduct, plaintiffs' counsel declared, "I asked the question in good faith, believing it is a proper question." This declaration carried the implication that actually there was a valid background for the question, and hence tended to confirm that which counsel's objection properly sought to avoid. The contention that instructions cure such errors is based on presumptions that in fact are no more than assumptions, if indeed they amount to that.

"Speculations" would be a more accurate term. Moreover, whether the objectionable questions were answered is also immaterial. It is the implications of the questions that constitute the misconduct, which the answers thereto cannot in any case erase. And whether the result of good faith, bad faith, ignorance, lack of understanding or poor judgment, the effect of prejudicial misconduct is the same. Either may be an excuse but neither amounts to a valid defense for such conduct.

If there is the slightest doubt as to the possible prejudicial effect as the result of misconduct, such doubt should be resolved in favor of the innocent party. Simple justice demands such a course. As was said in *Hoyt* v. *Davis Mfg. Co.,* 112 App.Div. 755 [98 N.Y.S. 1031], cited in *Arnold* v. *California Portland Cement Co. supra,* (p. 426, et seq.), "When counsel ask such questions, overreaching the limit, with a hope to gain a benefit from them, it is but fair that he should take the risk; and in a close case the court may properly consider that such suggestion had the very effect which counsel intended it should have." Not only should the risk be borne when such questions are asked surreptitiously but, as well, when asked in ignorance of the law, or on account of any other limitation.

In such circumstances the trial court may in its discretion declare a mistrial forthwith or await the termination of the trial and pass judgment on the possible prejudicial effect of such misconduct on a motion for a new trial. In the instant case both motions were denied.

The record herein reveals the question to have been close, hence the determination thereof should have been resolved in favor of the injured party and a new trial granted.

For the foregoing reasons, the judgment should be reversed and a new trial ordered.

A petition for a rehearing was denied March 23, 1944.