MANUEL FRANCISCO LLUBERAS ET AL., Plaintiffs, Appellees and Appellants, *v.* MARIO MERCADO E HIJOS, Defendant, Appellant and Appellee.

No. 10614.   Argued November 10, 1952.—Decided June 15, 1953.

8

*Pedro M. Porrata* and *Charles Cupril* for appellant and appellee. *Leopoldo Tormes* and *Luis López de Victoria* for appellees and appellants.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Of the three causes of action alleged in the complaint [1] we are only concerned now with the second, since as to the first one—seeking the revendication of two rural properties

[1] The background of this case may be found in the opinions delivered by this Court in *Lluberas* v. *Mario Mercado e Hijos*, 55 P.R.R. 39, and in *Mario Mercado e Hijos* v. *Olivieri*, 60 P.R.R. 855. However, for a better understanding of the case it helps to set forth the following, largely taken from said decisions:

On or about April 5, 1927, Elvira and Santia Olivieri Commins leased to Mario Mercado Montalvo for ten years the properties involved here. On March 23, 1932, Elvira executed a deed of voluntary mortgage in favor of Mario Mercado e Hijos for $41,256.89, and said deed contains two clauses which literally read as follows:

"SIXTH

"If at the expiration of the lease contract mentioned in the second clause herein the mortgage notes shall not have been paid, the debtor,

located at Indios Ward in the municipality of Guayanilla and of a one-half undivided interest in two other properties—the lower court rendered judgment for plaintiffs on

---

her assignees or successors in interest bind themselves to impose on any lessee the duty to deduct from the agreed rentals the necessary amounts to pay the interests owed to Mario Mercado e Hijos, and to make that payment to said Partnership on behalf of the debtor, as agreed to in the fourth clause of this deed.

"SEVENTH

"OPTION TO PURCHASE OR LEASE: Notwithstanding the foregoing clause, the debtor, as part of the consideration of this contract, agrees with the partnership Mario Mercado e Hijos, so long as the mortgage credit herein constituted remains unpaid, to grant it priority in the sale or lease of her undivided interests in the 'Indios' and 'Juanita' estates upon like price and terms. To that effect, as long as the mortgage credit remains unpaid, the debtor shall notify Mario Mercado e Hijos, by registered mail, of any offer of sale or lease made to her, and said partnership shall be granted thirty days for accepting or refusing such offers and during said period the debtor will refrain from any sale or lease to a third person. Should there be a sale or lease in violation of this agreement, Mario Mercado e Hijos shall be entitled to repurchase from the purchaser or lessee, which right may be exercised within thirty days of the recording of such sale or lease for the purpose of subrogating itself in the place, degree or priority of the purchaser or lessee."

On August 23, 1933, Elvira and Santia executed a deed of "Subdivision of Rural Estate Held in Common" in which the above two clauses above copied are restated and the properties belonging to the appearing parties are divided. The defendant herein consented to said subdivision of the properties held in common,

On May 9, 1933, Mario Mercado e Hijos assigned to the widow and children of José Tous Soto by public deed the mortgage credit constituted in its favor by Elvira Olivieri Commins. Nothing was said in that deed as to the option of sale above referred to. On March 31, 1937, the same parties executed a deed of "Ratification" in which they stated that the aforesaid assignment of the mortgage credit ". . . did not include the right or rights set out in favor of Mario Mercado e Hijos . . . said partnership reserving to itself the rights and obligations contained in said clause for the entire duration of the mortgage." Prior to the execution of the deed of "Ratification," namely, on February 25, 1937, Elvira had executed a deed of voluntary mortgage in favor of plaintiffs herein. Said deed, after describing the properties, provides that the latter are subject to the lease contract in favor of Mario Mercado e Hijos as well as to a voluntary mortgage in favor of said partnership; that Elvira acknowledges that she owes the Lluberas the sum of $45,000 and to secure said indebtedness she constitutes a voluntary mortgage on each one of the described properties, and at the same time appoints Manuel Francisco Lluberas Pasarell special attorney in fact to pay the credit originally existing in favor of Mario Mercado e Hijos and assigned by the latter to Belén González Salicrup widow of Tous Soto and her children.

June 18, 1945, in accordance with Rule 54(*b*)[2] and no appeal was taken; and with respect to the third cause of action—where plaintiffs claim damages in the amount of $58,440 for income taxes payable by them on the amount granted them under the second cause of action—the trial court, at the request of the plaintiffs and without objection by the defendant, postponed its ruling.

In the second cause of action which, as previously stated, is the only one that concerns us now, the plaintiffs allege that the two properties and the condiminia described in the first cause of action of the complaint have been planted with

On March 8, 1937, Belén González Salicrup and her children executed a deed cancelling the mortgage constituted on March 23, 1932 in favor of Mario Mercado e Hijos. On March 9, 1937, Elvira executed a deed of "Partial Cancellation of Mortgage, Sale of Rural Properties and Modification of Mortgage Terms." By virtue thereof she cancelled in part the mortgage previously constituted in favor of the plaintiffs herein and proceeded to sell to them the properties described in the deed. The existence of the lease contract in favor of Mario Mercado e Hijos was also set forth in said deed and it was stated that the purchasers would enter into the possession of the properties in accordance with the aforesaid lease contract. (It was after that sale that the heirs of Tous Soto and Mario Mercado e Hijos signed the deed of "Ratification" above referred to.) On April 6, 1937, Mario Mercado e Hijos demanded from the plaintiffs, by a notarial deed, the execution of a deed of conveyance of the properties sold to it. The plaintiffs refused, and on April 8, 1937 the defendant herein then deposited the amount that had been offered in the former District Court of Ponce. On the same day defendant herein filed in the same court a complaint for the "Rescission of Sale and other Relief." (This suit ended with judgment in favor of defendants therein.) See *Mario Mercado e Hijos* v. *Olivieri*, 60 P.R.R. 855 and *Mercado* v. *Commins*, 322 U.S. 465. While the latter suit was pending, plaintiffs herein brought an action of unlawful detainer against Mario Mercado e Hijos on December 6, 1937, in the same court. The complaint in that action was dismissed by the court and we affirmed the judgment thus rendered. *Lluberas* v. *Mario Mercado e Hijos*, 55 P.R.R. 39.

On October 20, 1944, the Lluberas Pasarells filed the complaint in the present action.

[2] Rule 54(*b*) provides:

"*Judgment at Various Stages.*—When more than one claim for relief is presented in an action, *the court at any stage*, upon a determination of the issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim, *may enter a judgment disposing of such claim*. The judgment shall terminate the action with respect to the claim so disposed of and the action shall proceed as to the remaining claims. . . ." (Italics ours.)

sugar cane, grass and minor crops since June 2, 1937 until the filing of the complaint; that the defendant has unlawfully enjoyed said products in bad faith and with knowledge that it had no title thereto; that after deducting expenses incurred in the cultivation and harvesting thereof, said fruits and products are worth $72,000; and that they have demanded its payment from the defendant and the latter has refused.

After joinder of issues, the case went to trial and the parties offered abundant oral and documentary evidence. The lower court entered judgment in favor of plaintiffs as to the second cause of action (claim for fruits collected and which should have been produced by the properties and condominia sought to be revendicated) and ordered the defendant to pay the plaintiffs the amount of $41,345.56 "as fruits collected by said defendant and which could have been produced by the properties and condominia involved in the revendication," with costs and $4,000 for plaintiffs' attorney's fees. In support of its judgment the trial court rendered a long opinion containing the following findings of fact:

"1st—That since June 2, 1937 the plaintiffs are the absolute joint owners of the undivided two properties and condominia described in the first cause of action, and their title is recorded in the Registry of Property of the municipality since March 10, 1937. . . . Judgment of this Court (for the 1st cause of action) dated August 23, 1945.

"2d—That the plaintiffs insistently demanded that defendants turn over the aforesaid properties and condominia to them and the latter always refused . . . and the plaintiffs obtained possession of the properties only after the Marshal executed our judgment, *supra,* on November 3, 1945.

"3d—That the defendant's material possession and enjoyment of the properties and condominia in question, from June 2, 1937, to November 3, 1945, was in bad faith.

". . . . . . . .

"Considering the expert evidence offered, which was almost entirely directed to establish the quality of the land, the methods

of cultivation and fertilizing and the quality of the cane rather than the production of cane, sugar and money in order to adequately determine the benefits yielded or which should have been yielded; taking also into account the interest of each party in using figures that would support their respective claims as much as possible, it was necessary, without disregarding the analysis and conclusions of each party, to make our own study, analysis or research.

"Consequently, we have utilized two items which are clearly set forth by the evidence, namely, the amount of expenses and the price of sugar. In order to determine the amount of cane and of sugar produced or which should have been produced, we have used as reference the book entitled '*La Industria del Azúcar de Caña en Puerto Rico*,' published in September 1942, by the Division of Research and Statistics of the Minimum Wage Board, Government of Puerto Rico, and additional statistics furnished by said Board beginning with the grinding years 1942–43. For years prior to 1942 we have used Table 2 found at page 18 of the above-mentioned book.

"      .      .      .      .      .      .      .      .

"9th—That the fruits from the properties and condominia involved in this suit from June 2, 1937, to November 3, 1945, during which time they were in the possession of the defendants, were those produced, or which should have been produced in 38 cuerdas of said lands, which is the maximum that could be cultivated (Richardson's testimony) with a total output during the period comprised in said grinding seasons in 1937–38, 1938–39, 1939–40, 1940–41, 1941–42, 1942–43, 1943–44, 1944–45, totaling, on an average basis, 10,575.86 tons of sugar and a profit of $42,159.31. . . .

"10th—For the 1945–46 grinding season the defendants invested until November 1945, the amount of $813.75 for expenses.

"11th—Since the expenses for the 1945–46 grinding season incurred by the defendants should be credited to the amount claimed here for fruits, the net profit of the eight grinding seasons in dispute is reduced to $41,345.56."

Both parties appealed from the judgment thus rendered. The plaintiffs now insist that the lower court erred (1) in fixing the amount of $41,345.56 as the value of the fruits produced and of those which should have been produced by

the properties of the plaintiffs from June 2, 1937, until November 3, 1945, that is "during eight years, five months, one day, when the net value of those fruits which were produced or should have been produced and collected by the owners thereof should never have been less than $60,000"; and (2) in fixing the fees for the plaintiff's attorney at $4,000 when said fees should never have been less than $10,000. And the defendant insists that the trial court erred (I) in finding that the plaintiffs came into the possession of the Cupey property only by virtue of the marshal's execution of the judgment on the first cause of action; (II) that the defendant's possession and enjoyment of said property was in bad faith and with knowledge that it had no title whatsoever; (III-A) in permitting, after the plaintiffs had introduced their evidence, an amendment to conform the pleadings to the evidence (Rule 15(b)), including in the complaint a claim for *fruits which should have been produced*, in spite of the fact that the amendment made a fundamental change in the theory of the case and notwithstanding the fact that the plaintiffs had offered no adequate evidence as to fruits that should have been produced; (B) in using the book entitled "*La Industria del Azúcar de Caña de Puerto Rico*" published in September 1942 by the Division of Research and Statistics of the Minimum Wage Board of Puerto Rico, as well as additional statistics published by said Board corresponding to 1943 and following years; and Table 2 found at page 18 of said work, which book, statistics and table were not offered in evidence; (C) in applying the Table found in the opinion (p. 122 of the judgment roll); (D) in not deciding that the plaintiffs did not prove fruits; (E) assuming that the latter were proved, in fixing them at $41,345.56; (F) in granting the plaintiffs an amount in excess of $17,936.80 which, according to the defendant's evidence, was the amount produced by the property; and (IV) in ordering them to pay fees and in fixing the excessive amount of $4,000 as such fees.

14

■■ We shall first discuss the second error assigned by the defendant, inasmuch as it is of the utmost importance to determine whether its possession was in good or bad faith. If in good faith, pursuant to the provisions of § 380 of the Civil Code, 1930 ed., the defendant could keep the fruits produced so long as its possession was not interrupted.[3] If in bad faith, pursuant to § 384 of the same Code,[4] it would be obliged not only to refund the fruits collected but also "those which the lawful possessor should have collected."

Section 363 of the Civil Code, 1930 ed., provides that "A *bona fide* possessor is deemed to be the person who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same," and that "A possessor in bad faith is deemed to be any person possessing in any case contrary to the above." Commenting on § 433 of the Spanish Civil Code (equivalent to § 363 of ours, quoted above) textwriter Q. Mucius Scaevola, in Vol. 8 of his *Comentarios al Código Civil*, 1948 ed., p. 226, says that:

". . . *strictly speaking, possession in good faith exists when the possessor believes that he possesses by virtue of a just title, because he is unaware of the defects thereof* . . . that the necessary requirements for the existence of possession in good faith are: title, defects in the title, unawareness by the possessor of such defects. The three must coexist. . ."

and that (p. 227):

". . . *a person who possesses a thing without title, and who has not received the thing from another person by any of the means of conveyance, should at least understand that he is possessing something which is not his own and, therefore, that he is not possessing in good faith. . . .*" (Italics ours.)

---

[3] Section 380 of the Civil Code, 1930 ed., provides that:
"A possessor in good faith becomes the owner of the fruits collected, so long as the possession is not legally interrupted."

[4] Section 384 of the Civil Code, 1930 ed., insofar as pertinent reads:
"A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected, and shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing. . . ."

To the same effect see *Capó v. A. Hartman & Co.*, 57 P.R.R. 190, 196 and *Martorell et al. v. J. Ochoa & Brother*, 25 P.R.R. 707, 711.

As stated in footnote 1 of this opinion, the defendant began to enjoy the natural possession of the property by virtue of a ten-year lease that expired on June 2, 1937. Section 1455 of the Civil Code, 1930 ed.[5] From that date on, by virtue of what title did it continue in possession? Obviously none, for the title under which it had the *natural possession* had expired. Therefore, having no title whatsoever, defendant cannot rely on § 363 of the Civil Code, *supra*, to allege that it continued in possession in good faith.

■ On the other hand, it might be argued that the right of option likewise referred to in footnote 1 of this opinion constituted sufficient title for defendant to remain in possession in good faith. However, this Court has decided that such right of option was assigned when the mortgage notes were assigned to the heirs of Tous Soto. See *Mario Mercado e Hijos v. Olivieri*, 60 P.R.R. 855, affirmed in *Mercado v. Commins*, 322 U. S. 465. Consequently, under such argument, its possession is not in good faith either.

■ Furthermore, the defendant came into the natural possession (not civil possession)[6] of the properties as the lessee thereof, and as such it possessed on behalf of the owners. In this connection § 361 of the Civil Code, 1930 ed., provides that "Possession is exercised upon things or rights, either by the same person who holds and enjoys them, or by another in his behalf," and § 365 of the same Code that "It is presumed that possession is continued under the same understanding by which it was acquired, until the contrary

---

[5] Section 1455 of the Civil Code, 1930 ed., provides that:
"If the lease has been made for a specified time, it expires on the day previously fixed, without the necessity of any notice."

[6] Section 360 of the Civil Code, 1930 ed., states that "Natural possession is the holding of a thing or the enjoyment of a right by any person," and that "Civil possession is the same holding or enjoyment joined to the intent of holding the thing or right as one's own."

be proven." Thus, the defendant knew that it had the natural possession of the properties and that they did not belong to it. With that knowledge, it is not possible to conclude that it was a possessor in good faith. *Cf. Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190, 196.

▇▇▇▇ In fact, the only evidence presented by the defendant to overcome the presumption of § 365, *supra*, was the judgment dismissing the action for unlawful detainer rendered some ten months after the expiration of the lease. Can it rely on said judgment to allege that its possession was in good faith? We do not think so. Although ordinarily a person who possesses by virtue of a judgment may be considered a possessor in good faith—judgment of the Supreme Court of Spain of March 4, 1893, 73 *Jur. Civ.* 326—such judgment must acknowledge his right to possession in order to have such effect. The judgment rendered in the action of unlawful detainer did not acknowledge such right to the defendant. Said judgment was based on the grounds that the defendant raised a series of complicated questions seriously tending to challenge the validity of plaintiff's title and that the summary unlawful detainer proceeding was not the proper proceeding to settle those questions. That judgment did not decide, however, that the defendant was entitled to the possession and much less that the possession it had been enjoying became, by virtue of the judgment rendered, possession in good faith. If said judgment had somehow decided that the defendant had title, although defective, perhaps the defendant might rely on said judgment to maintain that its possession was in good faith, claiming that it was not aware of the existence of such defects. But the judgment rendered did not acknowledge in any way the existence of a title in favor of the defendant. It merely decided, we repeat, that the validity of the plaintiffs' title had been seriously challenged and that unlawful detainer was not the adequate proceeding to decide the questions raised.

█ On the other hand, if the defendant believed that it was entitled to redeem the properties in its possession, it should have surrendered them to their owners and thereafter filed the proper complaint. Being no longer a lessee, the nature of its possession could not change because of a simple subjective change. Said possession remained a natural possession, just as it had been during the entire lease term. While it possessed as a lessee, defendant was, of course, entitled to enjoy the fruits produced—10 Manresa, Civil Code, 1950 ed., p. 672. After the lease expired, the fruits no longer belonged to the defendant.

Since defendant's possession, after the expiration of the lease, was possession in bad faith, it is liable for the fruits collected and for those which the possessor might have lawfully collected. Section 384, *supra; Costas* v. *G. Llinás & Co.,* 66 P.R.R. 688, 707, footnote 15.

██ The second fundamental question for decision is, in our opinion, whether the lower court was correct in rendering judgment on the second cause of action relying on the book *"La Industria del Azúcar de Caña en Puerto Rico"* published by the Minimum Wage Board, on the statistics prepared by that agency and on the "Table" referred to in the opinion of the court *a quo.* The book, the statistics and the Table in question were not offered in evidence. Hence, the correctness of the action of the trial court in basing its judgment on said material depends on whether the court could properly take judicial notice of it. Section 398 of the Code of Civil Procedure—§ 36 of the Law of Evidence—specifically enumerates the facts of which our courts shall take judicial notice.[7] Without need of evidence to that

---

[7] Section 398 of the Code of Civil Procedure—§ 36 of the Law of Evidence—reads:

"Courts shall take judicial notice of the following facts:

"1. The true significance of all English and Spanish words and phrases, and of all legal expressions.

"2. Whatever is established by law.

"3. Official acts of the legislative, executive, and judicial departments of Porto Rico and of the United States.

18

effect, courts shall take judicial notice of facts which are matters of common knowledge, notorious and unquestionable. *De Castro* v. *Board of Commissioners*, 59 P.R.R. 673; *Silva* v. *Carbonell*, 35 P.R.R. 224, 232. The doctrine of judicial notice was adopted as a shortcut to avoid the necessity for the formal introduction of evidence in certain cases where there is no real need for the offering of such evidence. *Communist Party of United States* v. *Peek*, 127 P. 2d 889; *Elford* v. *Hiltabrand*, 146 P. 2d 510; 20 Am. Jur., p. 112, § 97. Wigmore, the eminent textwriter, in his work *on Evidence*, Vol. IX, third edition, p. 535, § 2567, states that a matter judicially noticed merely means that it is taken as true without the offering of evidence by the party who ordinarily should have done so; that this is so because the court assumes that the matter is so notorious that it will not be disputed; but that the opponent is not barred from contradicting the matter by evidence, if he believes it disputable. See also *Ohio Bell Tel. Co.* v. *Comm'n*, 301 U. S. 292, 81 L. ed. 1093; *Mills* v. *Denver Tramway Corporation*, 155 F.2d 808; 57 Harv. L. Rev. 269; 59 Harv. L. Rev. 481; 62 Harv. L. Rev. 537; XIV Va. L. Rev. 544.

If the question before the lower court had been one concerning with the sugar industry of this island in general, that court would have acted properly in taking judicial notice of the aforesaid documents, provided that it so informed the parties and gave the latter an opportunity to challenge them. However, the question before the lower court related to the

"4. The seals of all the courts of Porto Rico, of the States of the Union, and of the United States.

"5. The accession to office and the official signature and seals of office of the principal officers of Government in the legislative, executive, and judicial department of Porto Rico and of the United States.

"6. The existence, title, national flag, and seal of every State or sovereign recognized by the executive power of the United States.

"7. The seals of courts of admiralty and maritime jurisdiction and of notaries public.

"8. The laws of nature, the measure of time, and the geographical divisions and political history of the world.

"In all these cases the court may consult and cite the adequate books or documents."

sugar industry of Puerto Rico, in general, but dealt with the amount of sugar cane and other products planted in the properties in question during the years in controversy. For such specific purposes the court could not take judicial notice of the oft-mentioned documents without giving the parties an opportunity to challenge them or to explain their contents, nor could it decide the case exclusively on the basis of such documents. *Cf. Mayagüez Sugar Co.* v. *Court of Tax Appeals*, 60 P.R.R. 737, 749; *Escudero* v. *Minimum Wage Board*, 66 P.R.R. 561 and cases cited at page 566. Therefore, the trial court erred in basing its judgment exclusively on said book, statistics and table without giving the parties the opportunity to which we have so often referred. Such error, of course, makes for the reversal of the judgment below. In the case under consideration, it was the duty of the lower court to base its judgment on the evidence submitted by both parties, settling the conflict therein, giving credit to that which in its opinion deserved it and arriving at the findings which it considered proper.

Although the judgment must be reversed for the reason given, we think it is advisable to discuss in general terms the other errors assigned. The trial court did not err in finding that the plaintiffs acquired possession of the property in litigation only by virtue of the marshal's execution of the judgment rendered in connection with the first cause of action. However, even if that error were committed, it would not be a reversible error, since an appeal is taken not from the grounds of the opinion but from the judgment itself. *Varela* v. *Fuentes*, 70 P.R.R. 838, 842.

Pursuant to Rule 15(*b*) of the Rules of Civil Procedure, the lower court was authorized to allow the complaint to be amended to conform to the evidence offered by the plaintiffs.[8] *Ramos* v. *Viejo*, 66 P.R.R. 607, 612–13; *Rovira* v.

---

[8] Rule 15(*b*) insofar as pertinent provides that ". . . such amendment of the pleadings as may be necessary to cause them to conform to the evidence . . . may be made upon motion of any party at any time . . ."

*Oliver*, 70 P.R.R. 106, 108; *Mena* v. *Llerandi*, 70 P.R.R. 163, 167.

Paragraphs (D), (E) and (F) of the third error assigned by the defendant have been implicitly decided upon disposing of the question of the book, the statistics and the table of which the trial court took judicial notice.

As to the matter of attorney's fees we shall merely say that since the case will be remanded to the original court for the entry of a new judgment, the court may in so doing find that the defendant was not reckless and therefore impose none; or find that the defendant acted recklessly and then impose a lower or higher sum than in the judgment now reversed. We therefore chose to refrain from deciding that question now.

The judgment appealed from will be reversed and the case remanded to the trial court for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández, Mr. Justice Ortiz and Mr. Justice Belaval did not take part in the decision of this case.

